This is an appeal of the trial court's denial of Williams's petition for writ of error coram nobis (as amended by the November 28 petition) which contests the validity of his 1983 conviction for the offense of robbery in the first degree and a resulting sentence of 40 years' imprisonment. The alleged robbery occurred June 28, 1981, and Williams's trial took place on September 5 and 6, 1983. Williams's defense at trial, corroborated by his co-defendant, was that he knew absolutely nothing of the robbery committed by his co-defendant (which occurred while he remained in the getaway car) until his co-defendant pulled a gun on him and ordered him to evade the police officers who were chasing them. Included in the contentions asserted in the petition is the claim that trial counsel was ineffective for (1) failing to investigate Williams's assertion that two of the arresting officers would support his defense theory of duress, thereby exonerating him, and (2) failing to submit written jury charges pertaining to a lesser included offense and his defense theory of duress. A review of the trial transcript reveals that *Page 1266 
this latter claim is clearly without merit. However, a hearing was conducted on the issue of ineffective counsel, wherein Williams's testimony pertinent to his claim of counsel's failure to fully investigate is as follows:
Prior to trial, Williams asked his court-appointed counsel to subpoena three persons: two Mobile Police Department officers and Winston Lett, his co-defendant who pleaded guilty. Lett testified; the officers did not. The requested officers were the officers who retrieved Williams from the wrecked getaway car and took him back to the Mobile Police Department, where one of them told him the following: "We saw what happened. We saw the man [Williams's co-defendant] when he put the gun at your head. We radioed back to the precinct to have them dispatch a car to not to pursue you all too close because we knew he held you at gunpoint." Although Williams did not get the two officers' names because of the situation and also because he was "shook up," Williams did inform his attorney that both were white and about five feet ten inches tall; one had brown hair and the other had black hair; and their car was numbered 18. He also asked his attorney about the officers on an occasion when the trial was continued.
Williams's appointed trial counsel also testified. He stated that he did not recall that Williams had given him any description, but he did have a copy of a police report which he had analyzed. He also did not remember Williams mention anything about two officers, but he did remember that Williams stated that the gun had been thrown from the car; however there was no indication that a gun was ever found.
During his direct examination, counsel was asked by Williams about a statement he had asked Williams to write to record the circumstances surrounding the robbery. The statement, found in counsel's file and dated March 30, 1983, was introduced into evidence. In the statement, after detailing the getaway chase when Lett forced him at gunpoint to evade the police, Williams stated, in pertinent part, as follows:
 "[O]n the way back [to the police station] I came [to] and one of the officer said he's awaking now so I asked them were was Billy and they said that, don't you ask the questions we will. So one of them said, I saw when he put the gun to your head and I radio not to follow you all so close, but [where] is the pistol? and I told him, that I looked for it to and could'n find it, so one of them said it wasn't in the car and I said, its got to be there because he had it when we crushed, so we went on to the M.P.D.. . . . Sgt. Bodden said he know I had nothing to do with it so Mobile cut me free but he said that D. [Daphne] P.D. had some questions to ask me and that they had to hold me for them. . . ."
Counsel was then asked why he would not have wanted to subpoena the two officers. He replied as follows: "It has been my experience that police officers ordinarily testify for the State of Alabama. And I have never seen one testify or say anything that was technical to a defendant in the trial of a case."
A review of the transcript of Williams's trial reveals that the only testimony concerning the chase was that of Sergeant Connick of the Mobile Police Department. He testified that, while he was off duty, and returning by way of the Bayway from Baldwin County, he heard the description of the getaway car and, a few minutes later, about a mile from the George Wallace Tunnel, he observed behind him a car with two black male occupants and fitting that description. He further explained that after he notified the police operator that the vehicle was about to enter the tunnel, the car passed him while he was travelling approximately 45 m.p.h.; that shortly after the alleged robbers exited the tunnel, more than ten marked police cars with blue lights and sirens began following the car; and that it was at this time that the car took off at a high rate of speed. When asked if he saw anyone threaten or appear to threaten the driver, Sergeant Connick stated the following: "I didn't see or hear *Page 1267 
nothing like that, no, ma'am. I wasn't that close to it." Finally, the officer testified that by the time he arrived at the scene of the accident, the two occupants were already out of the car.
The trial transcript also reveals that Winston Lett testified that Williams did not help him rob the store and that, in fact, Williams had no knowledge of the robbery before it occurred. He stated that he also gave a statement concerning this robbery and fourteen others. He explained that after they came through the Mobile tunnel, "there was enough police there to start an army," so he pulled out his pistol and told Williams to drive; and that this was when Williams knew that something was wrong. Lett further disclosed that he eventually threw the pistol out the window. In addition to stating that he "had been committing robberies off and on all of [his] life," he admitted that he had 42 felony convictions.
Williams also testified at his trial. Included in his testimony was his explanation of how Lett pointed a pistol at him and ordered him to flee when a police officer pulled behind him and turned on the blue sirens. He further explained that Lett's subsequent revelation that he had robbed the Daphne store was the first occasion that he knew of the robbery. He also stated that he assumed that Lett still had the gun when they wrecked.
When determining whether a defendant received ineffective assistance of counsel, in violation of the Sixth Amendment, "[t]he benchmark for judging [the] claim . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington,466 U.S. 668, ___, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). InStrickland v. Washington, the Supreme Court set forth the general standards for reviewing claims of ineffective assistance of counsel. The Court ruled that the defendant must show both that the defense counsel's performance was deficient, and that the deficient performance prejudiced the defense. Id.
at ___, 104 S.Ct. at 2064. Unless a defendant makes both showings, his claim is unsuccessful. Id. at ___,104 S.Ct. at 2064.
Specifically, to establish that a defense counsel's performance prejudiced the defense, "[a] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at ___, 104 S.Ct. at 2068. Thus, "the question is whether there is a reasonable probability that, absent the error, the factfinder would have had a reasonable doubt respecting guilt." Id. at ___, 104 S.Ct. at 2069. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at ___, 104 S.Ct. at 2068.
Although we find somewhat troublesome counsel's failure to at least investigate Williams's claim of the alleged observations and comments of the two police officers, see generally Dill v.State, [Ms. 6 Div. 396, July 2, 1985] (Ala.Cr.App. 1985), we choose to determine the validity of Williams's claim by focusing on the prejudice component. As stated in Strickland v.Washington, 466 U.S. at, ___, 104 S.Ct. at 2069-70:
 "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."
Applying the Strickland v. Washington standard to the facts of this case, we find that we must affirm the trial court's denial of Williams's petition. Williams has failed to carry his burden of establishing prejudice, for he failed to establish the existence of admissible evidence which his counsel could have uncovered. The court's observations in United States v.Guerra, 628 F.2d 410, 413 (5th Cir. 1980), cert. denied,450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981), are appropriate here: *Page 1268 
 "The burden is on [the petitioner] to allege and establish facts showing counsel's failure to call witnesses rendered his trial fundamentally unfair. Coon v. United States, 441 F.2d 279 (5th Cir. 1971), cert. denied, 404 U.S. 860 [92 S.Ct. 160, 30 L.Ed.2d 103] . . . (1971). Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative. Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). None of the alleged witnesses were called at the [federal habeas corpus] hearing and no one knows what they would have testified to. All we have is what [the petitioner] says they would have said."
Courts have viewed claims of ineffective assistance of counsel with great caution when the only evidence of a missing witness's testimony is from the defendant. See, e.g., Schwanderv. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985); United Statesv. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 534, 82 L.Ed.2d 839 (1984); Maxwell v.Mabry, 672 F.2d 683 (8th Cir. 1982); Washington v. Watkins,655 F.2d 1346, 1363-64 (5th Cir. 1981), cert. denied, 456 U.S. 949,102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).
Although Williams had every opportunity to establish evidence in support of his contention, he offered no evidence concerning the missing officers' testimony other than his own statement; the officers did not appear at the hearing, nor did Williams produce any affidavit from the missing officers which would suggest the content of their projected testimony. Moreover, Williams did not even establish that the officers exist. His claim rests merely upon his own unverified assertions. These speculations as to what the alleged officers might have contributed to Williams's defense are insufficient to establish a prima facie showing that their testimony would have raised a reasonable probability that the result of Williams's trial would have been different. See Morrow v. Parratt, 574 F.2d 411
(8th Cir. 1978), for treatment of a similar factual situation wherein the uninvestigated facts were established at the collateral proceeding. Thus, the trial court properly denied Williams's petition.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.