913 So.2d 493 (2005)
STATE of Alabama
v.
Gregory Clay HAMLET.
CR-03-0811.
Court of Criminal Appeals of Alabama.
January 7, 2005.
Rehearing Denied February 18, 2005.
Certiorari Denied May 13, 2005.
*494 Troy King, atty. gen., and Corey L. Maze, asst. atty. gen., for appellant.
William M. Dawson, Jr., Birmingham, for appellee.
Alabama Supreme Court 1040784.
WISE, Judge.
This is an appeal by the State of Alabama of the circuit court's order granting Gregory Clay Hamlet's Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he challenged his 2001 conviction for first-degree robbery and the resulting sentence, imposed pursuant to the Habitual Offender Act, of life imprisonment. On October 18, 2002, this Court affirmed Hamlet's conviction, by unpublished memorandum. See Hamlet v. State, (No. CR-01-1411) 876 So.2d 542 (Ala.Crim.App.2002) (table). Following the Alabama Supreme Court's denial of Hamlet's petition for a writ of certiorari, this Court issued a certificate of judgment on February 21, 2003.
On June 4, 2003, Hamlet filed a Rule 32 petition, seeking a new trial on the ground that he had been denied his constitutional right to the effective assistance of counsel. *495 Hamlet filed an amendment to his Rule 32 petition on September 19, 2003, in which he provided additional factual allegations concerning his ineffective-assistance-of-counsel claim. An evidentiary hearing was held on Hamlet's Rule 32 petition, and on January 8, 2004, the circuit court entered the following order:
"This matter coming before the Court after an evidentiary hearing and with both parties having submitted briefs, it is therefore ordered as follows: the petition is due to be granted and a new trial ordered for the reasons set out herein:
"Initially, it should be noted that this case took a rather strange course. Unfortunately, there is little precedent for this Court to look to in making its decision, which requires a rather fact-intensive exercise. Nevertheless, the caselaw does provide some guiding principles as to what constitutes ineffective assistance of counsel. The test that remains applicable is as follows:
"`First, the Defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Williams v. State, 480 So.2d 1265 (Ala.Crim.App.1985).
"This Court is also mindful that petitioner carries the burden of proof and must meet the elements of the above test by a preponderance of the evidence. Wilson v. State, 644 So.2d 1326, 1328 (Ala.Crim.App.1994). Further, the Court recognizes the presumption that trial counsel was sufficient and provided petitioner with effective assistance. Hallford v. State, 629 So.2d 6 (Ala.Crim.App.1992).
"The facts that assisted this Court in arriving at its decision are numerous. This is not the typical case in which there is a single act that may constitute ineffective assistance of counsel. These facts present a combination of errors by both the appointed and the retained lawyer.
"The Court finds that neither Attorney [John] Rudd nor Attorney [Rod] Walls properly prepared this matter for trial and confusion ensued at the trial. Rudd assumed this matter would settle, and any effort at preparation was thwarted by the late appearance of Walls. Further, it is clear that Walls did not have adequate time to prepare and was wholly unfamiliar with the facts in this case.
"Given Walls's recent appearance and lack of knowledge concerning the facts, a continuance was in order. Walls, instead, went forward with a defense based upon Rudd's presenting photographs to show that the cigarettes were encased and otherwise inaccessible. Unfortunately, there was no such evidence and the defense had to awkwardly change course in the middle of the proceedings. This conduct of pressing forward without any discovery or investigation falls below the duty owed to the petitioner.
"In addition, during the trial, Rudd never bothered to assist in the defense. Rudd knew of prior inconsistent statements by key State's witnesses, yet never bothered to inform Walls of them. Given the critical nature of these witnesses' statements, this silence compromised *496 petitioner's defense. Moreover, Rudd never communicated any defense strategy to Walls. While Rudd still owed a duty to petitioner, he mistakenly took the position that only Walls was responsible. Even assuming Rudd had formally withdrawn, this behavior also falls well below the duty owed to petitioner.
"In Esters v. State, 894 So.2d 755 (Ala.Crim.App.2003), the Court recognized the continuing duty of appointed counsel even when replaced by new counsel. The Court began its analysis by citing to Ala.R.Crim.P. 6.2 for the basic principle that a defendant deserves continuity of representation through all critical stages, including trial. Also cited was Rule 1.16(d) of the Ala.R.Prof. Cond., which states `even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client.' Based on the above citations, the Court recognized a continuing duty on the part of the appointed counsel, even if discharged by the client. But again, even if you ignore the above caselaw, it is undisputed that Rudd never even formally sought to withdraw from the case. Thus, he still owed a duty to petitioner, and Walls's involvement certainly does not release him from that continuing duty to assist in petitioner's defense.
"Finally, it is clear that petitioner was never adequately presented with his options regarding settlement and the consequences that could follow. Given the course of this case and the comments by Walls, the Court finds that petitioner was not given sufficient information to make an informed and intelligent choice. Although an argument can be made to the contrary, the confusing nature of this case and the lack of attorney cooperation contributed to petitioner's inability to make a sound and reasoned decision.
"The State argues that this matter is procedurally barred, citing petitioner's pro se motion for a new trial. However, Attorney Walls represented petitioner at the motion for new trial and drafted the motion. Independent counsel was appointed to represent petitioner only after the motion was denied. As a practical matter, the issue of ineffective assistance could not have been properly presented by Walls. See V.R. v. State, 852 So.2d 194 (Ala.Crim.App.2002). This action is the proper forum for this issue and is petitioner's first real opportunity to present this matter with the assistance of independent counsel and a full transcript of the proceedings.
"In summary, the Court finds that petitioner has shown that his legal representation fell below an objective standard of reasonableness, and that a reasonable probability existed, that but for both counsels' mistakes, the result of the trial would have been different. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a great probability that had this been handled appropriately, the petitioner would not be serving a life sentence. Id. There were a number of opportunities to avoid this result, however, neither attorney exercised good judgment in heading off this result. The Court, therefore, sets aside the conviction and orders a new trial."
This Court must determine whether the circuit court abused its discretion when it granted postconviction relief. Jones v. State, 724 So.2d 75, 76 (Ala.Crim. App.1998). Particular deference is accorded the decision of a circuit judge who presided over the original trial and the subsequent postconviction proceeding, because that judge is in a better position *497 than is an appellate court to evaluate claims that are based on personal observations of, and a familiarity with the circumstances surrounding, the postconviction claims. See, e.g., Brown v. State, 807 So.2d 1, 4 (Ala.Crim.App.1999).
Alabama courts have repeatedly held that when the facts presented in a Rule 32 proceeding are undisputed and an appellate court is presented with a pure question of law, the court reviews the legal question de novo. Ex parte White, 792 So.2d 1097, 1098 (Ala.2001); Brown v. State, 850 So.2d 1261, 1263 (Ala.Crim.App. 2002). When conflicting evidence is presented, however, a presumption of correctness is applied to the court's factual determinations, and they will not be disturbed unless they are clearly erroneous. See, e.g., Ex parte Hill, 690 So.2d 1201, 1204-05 (Ala.1996).
To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that his counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). "The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under `prevailing professional norms,' was `reasonable considering all the circumstances.'" Daniels v. State, 650 So.2d 544, 552 (Ala.Crim.App.1994) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
The prejudice component requires proof that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. As the Supreme Court explained:
"Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
"It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."
Strickland, 466 U.S. at 693, 104 S.Ct. 2052.
The Supreme Court went on to discuss in detail the prejudice component and its rationale for defining the component as it did. The Court explained:
"An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

"Accordingly, the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, United States v. Agurs, 427 U.S. [97,] at 104, 112-13 [(1976)], and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness, United States v. Valenzuela-Bernal, supra, 458 U.S. [858] at 872-874 [(1982)]. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability *498 sufficient to undermine confidence in the outcome.

". . . .
". . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."
Strickland, 466 U.S. at 694, 696, 104 S.Ct. 2052 (emphasis added).
The record reflects that the criminal charges arose as a result of Hamlet's theft of cigarettes from the Wal-Mart discount store in Homewood on January 25, 2000. An employee of Wal-Mart saw Hamlet pick up two packages of cigarettes from a display, put them in his pocket, and walk out of the store. When a store security officer confronted Hamlet in the parking lot, Hamlet allegedly threatened to "put a cap in your ass," and a chase ensued. Hamlet was subdued by store personnel and was taken back inside Wal-Mart and turned over to the Homewood police. Although no weapon was found on Hamlet, he was charged with first-degree robbery.
Attorney John Rudd was appointed to represent Hamlet. There is conflicting evidence regarding the amount of contact between Rudd and Hamlet before the trial. At least one letter from Rudd to Hamlet concerning the trial was returned as "undeliverable," and the contact telephone numbers given to Rudd for Hamlet had been disconnected. Hamlet's trial was initially set for November 13, 2000, but when he failed to appear, the trial was reset for March 5, 2001. When Hamlet again failed to appear, an arrest warrant was issued. Hamlet was taken into custody on November 14, 2001, and the circuit court set a December 10, 2001, trial date. Rudd testified that he met with Hamlet at the jail in anticipation of trial. Rudd stated that during that meeting, he advised Hamlet of a proposed plea bargain offered by the prosecution. Hamlet denied being apprised of the plea offer.
A few days before Hamlet's trial was scheduled to begin, attorney Rod Walls was retained to represent Hamlet. Both Rudd and Walls appeared for trial. Walls explained to the court that he had recently been retained to represent Hamlet, and he requested a continuance so that he could adequately prepare for trial. The circuit court denied Walls's request, but advised Rudd that he would be required to remain as cocounsel to assist Walls in trying Hamlet's case. Despite his lack of preparation, Walls acted as lead counsel at trial. Rudd maintained that although his involvement was minimal once Walls was retained, he did relate the State's plea-bargain offer to Walls once trial was underway. Whether Rudd actually reiterated the plea-bargain offer was disputed.
On December 11, 2001, the jury returned a verdict finding Hamlet guilty of first-degree robbery. Thereafter, the circuit court sentenced him as a habitual offender to life imprisonment. Hamlet, acting pro se, filed a new-trial motion in which he made a general claim of ineffective assistance of counsel. However, because Walls continued to represent Hamlet at the hearing on his motion for a new trial, this claim was not argued as a ground for obtaining a new trial. The circuit court appointed a third attorney  Jack Perkins  to represent Hamlet on appeal. In his appellate brief, Perkins attempted to pursue Hamlet's ineffective-assistance-of-counsel claim. However, given that Hamlet's claim was merely a general *499 allegation that Walls did not pursue, this Court  citing Ex parte Jefferson, 749 So.2d 406 (Ala.1999)  determined that Hamlet's claim had not been preserved for appellate review.
After the certificate of judgment was issued on February 21, 2003, Hamlet retained the services of yet another attorney  William Dawson  to pursue postconviction relief by filing a Rule 32, Ala. R.Crim.P., petition. Dawson filed a Rule 32 petition on Hamlet's behalf on June 4, 2003, in which he argued that Hamlet had received ineffective assistance of counsel at trial. Although the State argued that Hamlet's claim was procedurally barred, the circuit court  citing V.R. v. State, 852 So.2d 194 (Ala.Crim.App.2002)  determined that Hamlet could not have reasonably raised this claim earlier, given Walls's continued representation through proceedings on the motion for a new trial.
During an evidentiary hearing on Hamlet's petition, Walls's and Rudd's testimony differed on several key points, including whether the plea-bargain offer was reiterated during trial. Likewise, there appeared to be a lack of cooperation between counsel. Walls appeared to have had no opportunity to file any pretrial motions or to obtain additional discovery and very little  if any  time to investigate and interview potential witnesses. Walls admitted, in hindsight, that his representation had been deficient based, in part, on his lack of time to prepare for trial; he maintained that his deficiencies had caused the jury to reject his theory of defense and resulted in Hamlet's conviction and mandatory life sentence as a habitual offender. The circuit court agreed, stating "there is a great probability that had this [case] been handled appropriately, the petitioner would not be serving a life sentence," and entered a written order setting out its findings of fact and conclusions of law explaining why it was granting Hamlet a new trial.
As evidenced by the circuit court's own order, the evidence elicited during the evidentiary hearing undermined the court's confidence in the entire trial proceeding. Indeed, the court indicated, in virtually the same language used by the United States Supreme Court in Strickland v. Washington, that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. We agree with the circuit court that although Hamlet attempted to raise a claim of ineffective assistance of counsel in his pro se motion for a new trial, given Walls's continued representation of Hamlet through the hearing on the new-trial motion, the first time such a claim could reasonably be raised was in a Rule 32 petition.[1] Therefore, Hamlet's ineffective-assistance-of-counsel claim was not procedurally barred. This Court has recognized the need for flexibility in considering claims such as the one presented here. See V.R. v. State, 852 So.2d 194 (Ala.Crim.App.2002). Indeed, it would not be reasonable to expect retained defense counsel to argue his own ineffectiveness as a basis for his client's obtaining a new trial. See Besselaar v. State, 600 So.2d 978 (Ala.1992).
We have reviewed the record and the relevant legal principles. Giving due deference to the circuit judge's decision  because he presided over the trial proceedings as well as over the Rule 32 proceedings  we conclude that, given the particular *500 facts of this case, the circuit judge did not abuse his discretion in granting Hamlet relief on his Rule 32 petition. We cannot disagree with the court's conclusion that "there is a great probability that had this [case] been handled appropriately, the petitioner would not be serving a life sentence," given that the State in its plea bargain offered a 15-year sentence, split so that Hamlet would serve 3 years in exchange for Hamlet's forgoing a trial and entering a guilty plea to a lesser-included charge. The circuit court made specific findings of fact, engaged in the appropriate legal analysis, and thoroughly explained its conclusion. Certainly, this was not a decision the circuit court entered into lightly, given the fact that granting Hamlet relief added to the court's already heavy docket.
Based on the foregoing, the circuit court's judgment granting Hamlet the relief he requested in his Rule 32 petition is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur. SHAW, J., dissents, with opinion.
SHAW, Judge, dissenting.
In affirming the circuit court's order granting Gregory Clay Hamlet's Rule 32, Ala.R.Crim.P., petition for postconviction relief, on the ground of ineffective assistance of counsel, the majority states:
"[A]lthough Hamlet attempted to raise a claim of ineffective assistance of counsel in his pro se motion for a new trial, given [trial counsel's] continued representation of Hamlet through the hearing on the new-trial motion, the first time such a claim could reasonably be raised was in a Rule 32 petition. Therefore, Hamlet's ineffective-assistance-of-counsel claim was not procedurally barred. This Court has recognized the need for flexibility in considering claims such as the one presented here. See V.R. v. State, 852 So.2d 194 (Ala.Crim.App. 2002). Indeed, it would not be reasonable to expect retained defense counsel to argue his own ineffectiveness as a basis for his client's obtaining a new trial. See Besselaar v. State, 600 So.2d 978 (Ala.1992)."
(Footnote omitted.) Hamlet did not merely "attempt" to raise a claim of ineffective assistance of trial counsel in his motion for a new trial; he actually raised such a claim.
In V.R. v. State, 852 So.2d 194 (Ala. Crim.App.2002), which I authored, this Court unanimously held that "a defendant is not precluded by Rule 32.2(a)(3) and (5) from raising an ineffective-assistance-of-trial-counsel claim for the first time in a Rule 32 petition if the trial transcript was not prepared in time for appellate counsel to have reviewed the transcript to ascertain whether such a claim was viable and to present the claim in a timely filed motion for a new trial," 852 So.2d at 202, and we rejected the State's argument "that defendants ... must make a general allegation of ineffective assistance of counsel in a motion for a new trial, have the proceedings on the motion continued under Rule 24.4, Ala.R.Crim.P., until the trial transcript is prepared and/or other evidence is obtained in support of the ineffective-assistance allegation, and then amend the motion to include specific claims of ineffective assistance of counsel." 852 So.2d at 200. In rejecting the State's argument, this Court noted, albeit in dicta, several pitfalls associated with the procedure advocated by the State; in particular, this Court noted:
"If a defendant follows the procedure suggested by the State and files a motion for a new trial with nothing more than a general allegation of ineffective *501 assistance of trial counsel and the prosecutor refuses to consent to extend the time, or the trial court denies the defendant's request to extend the time, then the defendant has raised a general claim of ineffective assistance of counsel that a trial court would clearly be justified in denying without a hearing because the burden is on the defendant alleging ineffective assistance of counsel to `identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.' Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, such a general allegation of ineffective assistance of trial counsel in a motion for a new trial is generally not sufficient to preserve for review a more specific claim of ineffectiveness. See, e.g., M.B. v. State, 641 So.2d 330 (Ala.Crim.App.1994). Thus, the defendant would, in most cases, not be able to pursue more specific claims on appeal.

"Even more problematic, however, is that because the defendant challenged his trial counsel's effectiveness at trial, he or she would be barred by Rule 32.2(a)(2) from raising that issue in a Rule 32 petition. The only way to avoid this outcome would be for a defendant who is unsuccessful in obtaining an extension of time under Rule 24.4 to file a motion requesting, in effect, to withdraw the ineffective-assistance-of-counsel claim from the motion for a new trial. This would require additional action on the part of a defendant and his or her appellate counsel in order to preserve the right to seek postconviction relief under Rule 32."
852 So.2d at 201-02 (emphasis added; footnote omitted).
V.R. stands for the proposition that challenging trial counsel's effectiveness in a motion for a new trial is not reasonable if newly appointed appellate counsel does not have the benefit of the trial transcript; it does not stand for the proposition that once trial counsel's effectiveness is challenged in a motion for a new trial, even if done so unreasonably, that claim may be raised again in a Rule 32 petition. I agree with the majority that it was not reasonable, under the circumstances in this case, for Hamlet to challenge trial counsel's effectiveness in a motion for a new trial, and I also agree that it was not reasonable to expect trial counsel to argue his own ineffectiveness at the hearing on the motion for a new trial. However, reasonable or not, Hamlet challenged his trial counsel's effectiveness in his pro se motion for a new trial; although trial counsel did not present argument or evidence in support of the claim at the hearing on the motion for a new trial, the claim was not expressly abandoned or withdrawn; and the trial court denied Hamlet's motion. Thus, Hamlet is now barred by Rule 32.2(a)(2) from raising the claim again.
I would reverse the circuit court's order granting Hamlet's petition; therefore, I respectfully dissent.
NOTES
[1] Given that Hamlet was represented by counsel at the time he filed his pro se motion for a new trial, it is unclear whether his ineffective-assistance-of-counsel claim was even considered by the circuit judge. Hence, our characterization of Hamlet's new-trial motion as an "attempt" to raise a claim of ineffective assistance of counsel.