KELLUM, Judge.
Isaim Roshune Whitson appeals the circuit court’s denial of his petition for postconviction relief, filed pursuant to Rule 32, Ala. R.Crim. P., in which he attacked his 2009 convictions for three counts of capital murder and his resulting sentence of life imprisonment without the possibility of parole. This Court affirmed Whitson’s convictions and sentence on appeal in an unpublished memorandum issued on August 13, 2010. Whitson v. State, (No. CR-08-1399) 84 So.3d 1016 (Ala.Crim.App.2010) (table).[1] The Alabama Supreme Court denied certiorari review, and this *668 Court issued a certificate of judgment on November 19, 2010.
Whitson’s convictions arose from the shooting deaths of Brandon Bennett and Kendrick Elston while they were sitting in a vehicle in the parking lot of a nightclub called “Bootsie’s.” Several eyewitnesses to the shooting testified for the State that Whitson was the shooter. Whitson’s defense was that he did not commit the crimes. He attacked the State’s evidence, questioned the credibility of the State’s witnesses, and asserted that reasonable doubt existed as to his identity as the shooter.[2] He presented two witnesses on his behalf, also eyewitnesses to the shooting, neither of whom could identify the shooter, but both of whom contradicted some of the details of the shooting provided by the State’s eyewitnesses. In our unpublished memorandum affirming Whit-son’s convictions and sentence, this Court set out the pertinent testimony at trial as follows:
“Lacorey Wilson testified that, during the evening of May 28, 2005, he was in a sport utility vehicle with [Whitson], Clevius Porter, and Dontarius Ham-mons; that they drove to a place known as Bootsie’s; and that Elston was there. He also testified that, afterward, [Whit-son] got out of the vehicle, and he heard gunshots. Finally, he testified that, when he got back into the vehicle, [Whit-son] said, ‘My fault, cuz.’ (R. 370.)
“Latoya Embry testified that, during the late evening of May 28, 2005, or the early morning of May 29, 2005, she was with some friends and saw [Whitson] and his friends arrive at Bootsie’s. She also testified that, at some point, she saw [Whitson] get out of the passenger side of a vehicle, run to the passenger side of the vehicle in which the victims were riding, and start shooting into the vehicle at the victims. Finally, she testified that [Whitson] then got back into the vehicle he had gotten out of and that the vehicle left.
“Labronze Curry testified that, while he was at Bootsie’s on the evening of May 28, 2005, or the morning of May 29, 2005, he saw the victims together in a vehicle. He also testified that, at some point, [Whitson] started getting out of the vehicle in which he was riding; that he heard someone yell, ‘Kill the mother-’; and that [Whitson] walked around and shot into the vehicle in which the victims were sitting. (R. 472.) Curry further testified that [Whitson] got into a vehicle and left. He also admitted that he [Curry] was wearing a red hat at that time. Finally, he testified that he checked on the victims, that he got some rifles out of the trunk of his vehicle, and that he tried to run when law enforcement officers arrived.
“Terrance Tanner testified that he was an officer with the Talladega Police Department and that, around 2:00 a.m., he responded when the shots were fired at Bootsie’s. He also testified that he observed the victims, that it appeared that they had been shot, and that he called for backup and the paramedics. Tanner further testified that he observed a handgun in the driver’s seat while he helped remove Bennett from the vehicle. Finally, he testified that he *669 saw a person who was carrying a rifle and walking away from the area.
“Timothy Boling testified that he was a paramedic and that he responded to the scene at Bootsie’s. He also testified that the two -victims had gunshot wounds and that Bennett was in the driver’s seat and did not appear to be breathing. Finally, he testified that, when he and his partner removed Bennett from the vehicle, a gun fell out from behind his back.
“Captain Ronny Jones of the Tallade-ga Police Department testified that he responded to the scene at Bootsie’s at around 2:30 a.m. on May 29, 2005. He also testified that there was a rifle in the trunk, a handgun in the driver’s seat, a red baseball cap in the console area, and shell casings and parts of shells within the vehicle in which the victims were sitting. Jones further testified that they collected a red baseball cap and twelve 9mm Winchester shells from the parking lot. Finally, he testified that [Whitson] was later apprehended in California.
“Santini Hunter, a friend of the victims, testified that he was with the victims at Bootsie’s. He also testified that he was in the backseat of the vehicle and was bent down tying his shoe when shots were fired into the vehicle. Finally, he testified that Curry checked on the victims and then got a rifle out of the trunk of the vehicle.
“Sergeant Paul Zarris of the Los An-geles (California) County Sheriff’s Department testified that, on October 12, 2005, he stopped a vehicle in which [Whitson] was a passenger. He also testified that [Whitson] initially identified himself as Billy Green at that time, but that he later gave them his real name. Afterward, he contacted law enforcement authorities in Alabama.
“Dr. Stephen Boudreaux, a pathologist with the Alabama Department of Forensic Sciences, performed autopsies on the victims. He testified that both victims sustained multiple gunshot wounds and that they died as a result of those wounds.
“Ed Moran, statewide firearms and toolmarks discipline chief for the Alabama Department of Forensic Sciences, testified that he examined defects in the vehicle the victims were in when they were shot. He also testified that he found seven holes and that, based on his examination, he concluded that the rounds were fired into the vehicle from outside of the vehicle. Finally, he testified that it appeared that the shooter was moving around the vehicle, rather than standing still, as he fired into the vehicle.
“Melvin Rogers, a Department of Corrections employee who was at Bootsie’s at the time of the offense, testified for the defense. He also testified that it appeared that the driver got out of a sport utility vehicle, said something, and started shooting. Rogers further testified that he thought the shooter was in front of and on the passenger side of the vehicle the victims were in and that he thought the person shot into the passenger side of the vehicle. Finally, he testified that the person got back into his vehicle and left the scene.
“Howard Smoot testified that he was at Bootsie’s with Rogers and two other people. He also testified that two guys got out of a sport utility vehicle and started shooting into the vehicle in which the victims were sitting. Finally, he testified that they shot into the sides and front of the vehicle.
“In rebuttal, Nicole Embry testified that she was at Bootsie’s with her cousin, Latoya Embry, on May 29, 2005. She also testified that she saw [Whitson] get out of a sport utility vehicle with a *670 gun and start shooting into the vehicle in which the victims were sitting. Afterward, he got back into the sport utility vehicle and left.”
Following his sentencing hearing on May 14, 2009, Whitson’s trial counsel withdrew from representing him, and new counsel, Jonathon L. Adams, was appointed to represent Whitson on appeal. Adams filed a timely motion for a new trial alleging, among other things, that Whit-son’s trial counsel had been ineffective. After several continuances by agreement of the parties, the trial court held a hearing on the motion on January 28, 2010. Following the hearing, the trial court denied the motion. On appeal, this Court initially remanded the case by order for the trial court to make specific written findings of fact regarding each of Whit-son’s claims of ineffective assistance of trial counsel. The trial court complied with this Court’s instructions and, as noted above, this Court then affirmed Whitson’s convictions and sentence.
Whitson filed this, his first, Rule 32 petition on November 17, 2011. In his petition, Whitson alleged that his appellate counsel was ineffective for not raising in the motion for a new trial and then on appeal three additional claims of ineffective assistance of trial counsel. The State filed an answer and a motion to dismiss Whitson’s petition on December 13, 2011, arguing that Whitson’s claims were insufficiently pleaded and were meritless. The circuit court appointed counsel to represent Whitson and scheduled an evidentiary hearing for February 16, 2012. Following the hearing, the circuit court issued an order denying Whitson’s petition, finding, among other things, that Whitson had failed to satisfy his burden of proof as to his claims and that his claims were merit-less.[3]
On appeal, Whitson reasserts all three claims from his petition and argues that the circuit court abused its discretion in denying him relief.
“ ‘[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.’ Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, ‘[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.’ Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992).”
Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App.2003).
“The burden of proof in a Rule 32 proceeding rests solely with the petitioner, not the State.” Davis v. State, 9 So.3d 514, 519 (Ala.Crim.App.2006), rev’d on other grounds, 9 So.3d 537 (Ala.2007). “[I]n a Rule 32, Ala. R.Crim. P., proceeding, the burden of proof is upon the petitioner seeking post-conviction relief to establish his grounds for relief by a preponderance of the evidence.” Wilson v. State, 644 So.2d 1326, 1328 (Ala.Crim.App.1994). Rule 32.3, Ala. R.Crim. P., specifically provides that “[t]he petitioner *671 shall have the burden of ... proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.”
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that counsel’s performance was deficient and (2) that that deficient performance actually prejudiced the defense. “To meet the first prong of the test, the petitioner must show that his counsel’s representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel’s assistance was reasonable, considering all the circumstances.” Ex parte Lawley, 512 So.2d 1870, 1872 (Ala.1987). “ ‘This court must avoid using “hindsight” to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.’ ” Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App.1999) (quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992)). “A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Strickland, 466 U.S. at 689. As the United States Supreme Court explained:
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland, 466 U.S. at 689 (citations omitted). To prove prejudice, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 466 U.S. at 694. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. “It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.” Id. at 693.
“The standards for determining whether appellate counsel was ineffective are the same as those for determining whether trial counsel was ineffective.” Jones v. State, 816 So.2d 1067, 1071 (Ala.Crim.App.2000), overruled on other grounds by Brown v. State, 903 So.2d 159 (Ala.Crim.App.2004). “The process of evaluating a case and selecting those issues on which the appellant is most likely to prevail has been described as the hallmark of effective appellate advocacy.” Hamm v. State, 913 So.2d 460, 491 (Ala. *672 Crim.App.2002). As this Court explained in Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998), aff'd, 766 So.2d 975 (Ala.2000), overruled on other grounds by Ex parte Taylor, 10 So.3d 1075 (Ala.2005):
“As to claims of ineffective appellate counsel, an appellant has a clear right to effective assistance of counsel on first appeal. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, appellate counsel has no constitutional obligation to raise every non-frivolous issue. Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The United States Supreme Court has recognized that ‘[experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.’ Jones v. Barnes, 463 U.S. at 751-52, 103 S.Ct. 3308. Such a winnowing process ‘far from being evidence of incompetence, is the hallmark of effective advocacy.’ Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Appellate counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief on appeal. Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993), cert. denied, 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993). One claiming ineffective appellate counsel must show prejudice, i.e., the reasonable probability that, but for counsel’s errors, the petitioner would have prevailed on appeal. Miller v. Keeney, 882 F.2d 1428, 1434 and n. 9 (9th Cir.1989).”
766 So.2d at 876.
With these principles in mind, we address each of Whitson’s claims in turn.
I.
First, Whitson alleged in his petition, and argues on appeal, that his appellate counsel was ineffective for not raising in the motion for a new trial and then on appeal a claim that his trial counsel was ineffective for not requesting jury instructions on attempted murder and first-degree assault as lesser-included offenses of the capital-murder charges.[4] According to Whitson, the evidence at his trial indicated that each victim had multiple gunshot wounds but that only some of those wounds were fatal, that at least one of the victims’ wounds was from a different caliber bullet than the others[5] and was not a fatal wound, and that there was testimony from one witness that there were two shooters, Thus, Whitson alleged:
“Had trial counsel asked for these lesser-included offenses it would have changed the outcome because despite the petitioner’s defense[6] the petit jury could have believed the petitioner lied *673 about his presence at the crime scene and did shoot at the vehicle with the victims in it but the gun used by the petitioner did not shoot the bullets that hit the victims or did shoot some bullets that hit the victim or victims but was not the fatal projectiles that killed one or both the victims. The State did not allege complicity. Thus, the petitioner is only responsible for his personal acts and for no other person’s acts. Because the evidence of a second shooter existed, it was rational for trial counsel to argue and request the court to instruct the petit jury with the lesser-included offenses of ... attempted murder and assault first.
“... An attempted murder instruction was warranted because the petitioner may have intended to kill the victims and shot and missed. An assault instruction was warranted because the petitioner may have shot the victim or victims, but his projectiles did not cause either of their deaths, no transferred intent doctrine is applicable because no indictment for conspiracy exists or complicity instruction requested by the State when their evidence exhibits a second shooter.”
(C. 11-12.)
At the evidentiary hearing, Whitson testified on his own behalf to essentially the same thing he alleged in his petition. He said that he believed the jury should have been instructed on attempted murder and first-degree assault as lesser-included offenses to the capital-murder charges because the jurors could have believed he was at the scene and fired shots at the victims, but that none of the shots he fired proved fatal to the victims. Appellate counsel Adams was also called by Whitson to testify at the hearing; however, Whit-son did not question appellate counsel regarding why he did not raise in the motion for a new trial and then on appeal a claim that Whitson’s trial counsel was ineffective for not requesting jury instructions on lesser-included offenses. Whitson did not call his trial counsel to testify.
Initially, we note that Whit-son’s entire claim in this regard is premised on the idea that he could not be held accountable for the actions of an alleged second shooter who, Whitson claims, may have been the one who fired the fatal shots. This is simply false. Regardless of whether complicity was charged in his indictment or the jury was specifically instructed on complicity, the law in Alabama is clear: “[T]he distinction between principals and accessories has long been abolished; one charged as a principal may be convicted as an accomplice, and the State is not required to notify the defendant in the indictment or otherwise that it is proceeding under a complicity theory.” Johnson v. State, 612 So.2d 1288, 1297 (Ala.Crim.App.1992). Indeed, “[t]he law is well settled in this State that, although an appellant may not have fired the fatal shot, such fact does not bar his conviction because one who aids another in the commission of a criminal offense is as equally responsible as the actual doer of the act.” Williams v. State, 384 So.2d 1205, 1210 (Ala.Crim.App.1980). Thus, even if there was a second shooter and Whitson did not, in fact, fire the fatal shots, Whitson could still be found guilty of the capital murders because the only evidence presented at Whitson’s trial established, without a doubt, that Whitson fired shots into the victims’ vehicle and that both Bennett and Elston were killed during the shooting. Because both victims died, there was no rational basis for instructions on either attempted murder or first-degree assault. See § 13A-l-9(b), Ala.Code 1975 (“The court shall not charge the jury with respect to an included offense unless there is *674 a rational basis for a verdict convicting the defendant of the included offense.”).
Moreover, even if there were some basis for instructions on lesser-included offenses, it is well-settled that “a ‘request for jury instructions is a matter of trial strategy and, absent a clear showing of improper or inadequate representation, is to be left to the judgment of counsel.’ ” Maxwell v. State, 620 So.2d 93, 97 (Ala.Crim.App.1992) (quoting Parker v. State, 510 So.2d 281, 286 (Ala.Crim.App.1987)). “Trial counsel should have the broadest discretion in all matters of trial strategy.” Vinson v. State, 494 So.2d 175, 177 (Ala.Crim.App.1986). Thus, “even if the evidence supports jury instructions on lesser included offenses, the failure of counsel to request charges on the pertinent lesser included offenses does not necessarily render counsel’s assistance ineffective.” Parker, 510 So.2d at 286. See also Saffold v. State, 570 So.2d 727 (Ala.Crim.App.1990). In discussing the presumption that trial counsel was competent in its representation, the United States Court of Appeals for the Eleventh Circuit has noted:
“The presumption impacts on the burden of proof and continues throughout the case, not dropping out just because some conflicting evidence is introduced. ‘Counsel’s competence ... is presumed, and the [petitioner] must rebut this presumption by proving that his attorney’s representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.’ Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986) (emphasis added) (citations omitted). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption. Therefore, ‘where the record is incomplete or unclear about [counselj’s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.’ Williams [v. Head,] 185 F.3d [1223,] 1228 [(11th Cir.1999)]; see also Waters [v. Thomas,] 46 F.3d [1506,] 1516 [(11th Cir.1995)] (en banc) (noting that even though testimony at habeas evidentiary hearing was ambiguous, acts at trial indicate that counsel exercised sound professional judgment).”
Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000).
Here, Whitson did not call his trial counsel to testify at the Rule 32 hearing. Therefore, the record is silent as to the reason for trial counsel’s not requesting instructions on attempted murder and first-degree assault, and we must presume that this decision was sound trial strategy and was the result of reasonable professional judgment. Therefore, Whitson failed to prove that his trial counsel was ineffective in this regard. Because Whit-son failed to prove that his trial counsel was ineffective, he necessarily failed to prove that his appellate counsel was ineffective for not raising this ineffective-assistance-of-trial-counsel claim in the motion for a new trial and then on appeal.
In addition, although Whitson called appellate counsel to testify at the Rule 32 hearing, he failed to question appellate counsel about his reasons for not raising in the motion for a new trial and on appeal this claim of ineffective assistance of trial counsel. Thus, the record is unclear as to the basis of appellate counsel’s decision in this regard, and we must presume that appellate counsel exercised reasonable professional judgment in this regard. Therefore, for this reason as well, Whitson failed to prove that his appellate counsel was ineffective for not raising this claim of ineffective assistance of trial counsel in the motion for a new trial and then on appeal.
*675 For these reasons, the circuit court correctly determined that Whitson failed to prove his claim that his appellate counsel was ineffective for not raising in the motion for a new trial and then on appeal a claim that his trial counsel was ineffective for not requesting jury instructions on attempted murder and first-degree assault as lesser-included offenses of the capital-murder charges.
II.
Whitson also alleged in his petition, and argues on appeal, that his appellate counsel was ineffective for not raising in the motion for a new trial and then on appeal a claim that his trial counsel was ineffective for not calling two alleged alibi witnesses to testify on Whitson’s behalf. According to Whitson, he was not at the scene at the time of the shooting, but was with a man named Mark McKenzie at a club called “Zyoos” that was “over a mile away” from the shooting and that, at the time of the shooting, he was also on his cellular telephone talking with his then girlfriend, Samaiyah Lamison. (C. 12-13.) Whitson claimed that his trial counsel was aware of the existence of these witnesses and was aware that these witnesses would testify to his alibi at the time of the shooting but that counsel failed to call them to testify.
At the Rule 32 hearing, Whitson testified to facts similar to those he alleged in his petition. He said that he was not at “Bootsie’s” at the time of the shooting, but that he was “on [his] way” there and was talking on the telephone with his then girlfriend, Samaiyah Lamison. (R. 29.) Whitson stated that Lamison was at “Bootsie’s” at the time of the shooting and told him over the telephone about the shooting. According to Whitson, he arrived at “Bootsie’s” after the shooting but before the police arrived, found Lamison, and left with her. Whitson did not mention Mark McKenzie in his testimony at the hearing. As noted previously, Whitson did not call his trial counsel to testify at the hearing and, although he called appellate counsel to testify, he did not question appellate counsel regarding the reason why he did not raise in the motion for a new trial and then on appeal a claim that trial counsel was ineffective for not calling Lamison and McKenzie to testify at Whit-son’s trial. Whitson also did not call La-mison or McKenzie to testify at the Rule 32 hearing.
As this Court explained in Williams v. State, 480 So.2d 1265 (Ala.Crim.App.1985), in addressing a similar allegation:
“The court’s observations in United States v. Guerra, 628 F.2d 410, 413 (5th Cir.1980), cert. denied, 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981), are appropriate here:
“ ‘The burden is on [the petitioner] to allege and establish facts showing counsel’s failure to call witnesses rendered his trial fundamentally unfair. Coon v. United States, 441 F.2d 279 (5th Cir.1971), cert. denied, 404 U.S. 860 [92 S.Ct. 160, 30 L.Ed.2d 103] (1971). Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a. witness would have testified to are largely speculative. Buckelew v. United States, 575 F.2d 515, 521 (5th Cir.1978). None of the alleged witnesses were called at the [federal ha-beas corpus] hearing and no one knows what they would have testified to. All we have is what [the petitioner] says they would have said.’
“Courts have viewed claims of ineffective assistance of counsel with great cau *676 tion when the only evidence of a missing witness’s testimony is from the defendant. See, e.g., Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985); United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir.1983), cert. denied, 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984); Maxwell v. Mabry, 672 F.2d 683 (8th Cir.1982); Washington v. Watkins, 655 F.2d 1346, 1363-64 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).
“Although Williams had every opportunity to establish evidence in support of his contention, he offered no evidence concerning the missing officers’ testimony other than his own statement; the officers did not appear at the hearing, nor did Williams produce any affidavit from the missing officers which would suggest the content of their projected testimony. Moreover, Williams did not even establish that the officers exist. His claim rests merely upon his own unverified assertions. These speculations as to what the alleged officers might have contributed to Williams’s defense are insufficient to establish a pri-ma facie showing that their testimony would have raised a reasonable probability that the result of Williams’s trial would have been different. See Morrow v. Parratt, 574 F.2d 411 (8th Cir.1978), for treatment of a similar factual situation wherein the uninvestigated facts were established at the collateral proceeding. Thus, the trial court properly denied Williams’s petition.”
480 So.2d at 1267-68.
Similarly, here, the only evidence presented in support of this claim was Whit-son’s own self-serving testimony regarding his alleged alibi at the time of the shooting.[7] Absent any testimony from Lamison or McKenzie, Whitson clearly failed to prove that his trial counsel was ineffective for not calling these witnesses to testify on his behalf at his trial. Because Whitson failed to prove that his trial counsel was ineffective, he necessarily failed to prove that his appellate counsel was ineffective for not raising this claim of ineffective assistance of trial counsel in the motion for a new trial and then on appeal.
In addition, although Whitson called appellate counsel to testify at the Rule 32 hearing, he failed to question appellate counsel about his reasons for not raising in the motion for a new trial and then on appeal this claim of ineffective assistance of trial counsel. Thus, as already explained, the record is unclear as to the basis of appellate counsel’s decision, and we must presume that appellate counsel exercised reasonable professional judgment in this regard. Therefore, for this reason as well, Whitson failed to prove that his appellate counsel was ineffective for not raising this claim of ineffective assistance of trial counsel in the motion for a new trial and then on appeal.
For these reasons, the circuit court correctly found that Whitson failed to prove that his appellate counsel was ineffective for not raising in the motion for a new trial and then on appeal a claim that his trial counsel was ineffective for not calling two alleged alibi witnesses to testify on Whit-son’s behalf at his trial.
III.
Finally, Whitson alleged in his petition, and argues on appeal, that his appellate counsel was ineffective for not raising in a motion for a new trial and then on *677 appeal a claim that Whitson’s trial counsel was ineffective for not moving for a mistrial based on alleged juror misconduct. Specifically, Whitson argued that, during trial, juror P.D. had “communieat[ed] with two or more of her coworkers who were related to the victims” and, although P.D. was removed from the jury and replaced with an alternate, P.D. had “communicated with the rest of the petit jury before she was removed,” which, he argues, ultimately tainted his trial because P.D. “persuaded or informed the other petit jurors of information not stated in open court.” (C. 13.)
In its order, the circuit court made the following findings regarding this claim:
“The State of Alabama alleged in its Answer and Motion to Dismiss the following as it relates to appellate counsel failing to raise the issue that trial counsel was ineffective for failing to move for a mistrial. The Answer and Motion to Dismiss contained, in part, the following:
“ ‘Claim Three: Denial of effective assistance of appellate counsel due to failure of appellate counsel’s failure [sic] to include claim that trial counsel was ineffective for failing to move for a mistrial because Juror [P.D.] tainted the petit jury.
“ ‘During the trial of the above-styled cases, Juror [P.D.] notified this Court’s Attendant, Cindy Haynes, that she had been contacted concerning the case the previous night. Ms. Haynes notified the Court and the Court conducted a hearing on the issue outside the presence of the jury. State Ex. l.[8] During the hearing, [P.D.] testified that a third party contacted her to let her know that a coworker of [P.D.’s] was related to one of the victims. [P.D.] stated that she didn’t even let the third party tell her who the victim was before ending the conversation. [P.D.] further stated that she lost sleep, not because of the issue of her coworker being related to one of the victims, but because she didn’t want to upset the Court. Per this Court’s prior instructions to the jury, [P.D.] volunteered the information concerning the contact. The Court, at the request of the Defense, excused [P.D.]. When the jury was brought back into the courtroom, this Court asked the jurors if they had any knowledge of why he excused [P.D.], to which he received no response. The Court then ascertained whether each juror would be able to exclude the fact that [P.D.] was excused. All jurors responded in the affirmative. The State would note that when State’s Exhibit 1 is read in its entirety, it is clear that the State of Alabama, Counsel for the Defense, and the Court were all very appreciative of [P.D.] and how she conducted herself. [P.D.] could not help that a third party, who had not been a part of the proceedings nor attended the proceedings, contacted her concerning this case. [P.D.] did exactly what she was supposed to do in notifying Court personnel of the contact and this Court excused her out of an abundance of caution. There is no evidence that [P.D.] discussed this issue with the other jurors. This claim has no merit and is due to be overruled and denied.’
[[Image here]]
“[Whitson] testified in substance that there was no telling what the juror that was dismissed told other jurors. [Whit- *678 son] has absolutely no evidence that this occurred and he merely speculates about this issue. He has therefore not met his burden of proof.”
(C. 59-61.) The circuit court’s findings are supported by the record of the Rule 82 proceedings and the record from Whitson’s direct appeal.
Contrary to Whitson’s contention, the record from his direct appeal reflects that juror P.D. did not, in fact, communicate with any relatives of the victims. Rather, the record reflects that during an overnight recess, P.D. received a telephone call from one of her coworkers who told her that another of her coworkers was related to one of the victims. Before she could learn to which victim her other coworker was related, P.D. ended the conversation. P.D. then promptly reported the telephone call the next morning, before the trial resumed, and was excused from the jury. Nothing in the record indicates that P.D. ever spoke with the other jurors between the time of the telephone call and the time she was excused, much less that she told the other jurors about the information she had received, and Whitson presented no evidence at the Rule 82 hearing of any such communication.
Whitson testified at the hearing that there was “no proof,” other than P.D.’s statements to the trial court, that she had actually ended the conversation as she said, and that he was prejudiced by P.D.’s conduct because “it ain’t no telling what she could have said to the jury.” (R. 8.) However, Whitson did not call P.D. or any of the other jurors who sat on his jury to testify at the Rule 32 hearing in order to establish what, if anything, P.D. told the other jurors. Rather, as the circuit court noted, Whitson’s claim in this regard is based entirely on his own speculation that P.D. may have spoken to the other jurors. Speculation is woefully insufficient to satisfy a Rule 32 petitioner’s burden of proof.
“[A] mistrial is a drastic remedy, to be used sparingly and only to prevent manifest injustice.” Peoples v. State, 951 So.2d 755, 763 (Ala.Crim.App.2006). “ ‘ “A motion for a mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only where there is a fundamental error in the trial which would vitiate the result.” ’ ” Gamble v. State, 791 So.2d 409, 437-38 (Ala.Crim.App.2000) (quoting Jenkins v. State, 627 So.2d 1034, 1038 (Ala.Crim.App.1992), aff'd, 627 So.2d 1054 (Ala.1993) (quoting in turn Thompson v. State, 527 So.2d 777, 779 (Ala.Crim.App.1988))). Whitson failed to prove that a mistrial was warranted based on P.D.’s conduct and, thus, failed to prove that his trial counsel was ineffective for not moving for a mistrial. Because he failed to prove that his trial counsel was ineffective in this regard, Whitson also necessarily failed to prove that his appellate counsel was ineffective for not raising this claim of ineffective assistance of trial counsel in the motion for a new trial and then on appeal.
In addition, as with his other claims, although Whitson called appellate counsel to testify at the Rule 32 hearing, he failed to question appellate counsel about his reasons for not raising in the motion for a new trial and then on appeal this claim of ineffective assistance of trial counsel. Thus, as already explained, the record is unclear as to the basis for appellate counsel’s decision, and we must presume that appellate counsel exercised reasonable professional judgment in this regard. Therefore, for this reason as well, Whitson failed to prove that his appellate counsel was ineffective for not raising this claim of ineffective assistance of trial counsel in the motion for a new trial and then on appeal.
*679 For these reasons, the circuit court correctly found that Whitson failed to prove that his appellate counsel was ineffective for not raising in the motion for a new trial and then on appeal a claim that his trial counsel was ineffective for not moving for a mistrial on the ground of juror misconduct.
IV.
The circuit court correctly determined that Whitson failed to prove any of his three claims of ineffective assistance of appellate counsel. Therefore, the circuit court’s denial of Whitson’s Rule 32 petition was proper.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. This Court may take judicial notice of its own records, and we do so in this case. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim. App.1992). References to the record from Whitson’s direct appeal will be to "RDA.”

. Although Whitson asserted in his petition that his defense at trial was that he was not present at the time of the crimes and had an alibi, that is not, in fact, the case. Whitson did make a statement to police after his arrest in which he claimed that he was not present at the time of the shooting. However, the State did not introduce that statement into evidence at trial, and no other evidence was presented indicating that Whitson was not present at the scene at the time of the shooting.

. The circuit court also made an additional finding that Whitson’s claims of ineffective assistance of appellate counsel were precluded by Rules 32.2(a)(2) and (a)(4) because the underlying claims of ineffective assistance of trial counsel were raised and addressed at trial and on appeal. Whitson appears to take issue with this finding in his brief on appeal, and we agree that this finding by the circuit court was incorrect. However, that does not require reversal of the circuit court’s judgment because the court's other findings — that Whitson failed to .satisfy his burden of proof and that his claims were meritless — were, as explained more thoroughly below, correct.

. In his petition, Whitson also alleged that an instruction on intentional murder should have been given. However, the record from Whit-son’s direct appeal reflects that an intentional-murder charge was, in fact, given to the jury. Thus, Whitson does not pursue this part of his claim on appeal.

. This assertion by Whitson is incorrect. Our review of the record from Whitson’s direct appeal reflects that all the fired bullets, bullet jackets, and cartridge casings found at the scene and in the bodies of the victims that were sufficiently intact for comparison were from the same caliber class of bullets — .38 caliber class bullets. Testimony at trial also indicated, contrary to Whitson’s belief, that 9mm bullets are "part of the family that’s better known as the nominal or basic .38 caliber class range of bullets.” (RDA, R. 844.) Indeed, testimony indicated that the .38 caliber class of bullets is a broad class of bullets "that includes many nominal classes of bullets: 38 special, 357 magnum, 9 millimeter.” (RDA, R. 932.)

. See note 2, supra.

. That testimony did not even include an allegation regarding exactly what Whitson believed either Lamison or McKenzie would have testified to had they been called to testify at his trial.

. State’s exhibit 1 is an excerpt from the transcript of Whitson's trial in which the trial court and parties dealt with the issue that arose regarding P.D.