BURKE, Judge.
Michael David Carruth was convicted of four counts of capital murder in connection with the death of 12-year-old William Brett Bowyer. The murder was made capital (1) because it was committed during the course of a kidnapping in the first degree, see § 13A-5-40(a)(l), Ala.Code 1975; (2) because it was committed during the course of a robbery in the first degree, see § 13A-5-40(a)(2), Ala.Code 1975; (3) because it was committed during the course of a burglary in the first degree, see § 13A-5-40(a)(4), Ala.Code 1975; and (4) because the victim was less than 14 years of age, see § 13A-5-40(a)(15), Ala.Code 1975. Carruth was also convicted of attempted murder, a violation of §§ 13A-6-2 and 13A-4-2, Ala.Code 1975, first-degree robbery, a violation of § 13A-8-41, Ala. Code 1975, and first-degree burglary, a violation of § 13A-7-5, Ala.Code 1975, with respect to the victim’s father, Forest Bowyer. The jury unanimously recommended that Carruth be sentenced to death for his capital-murder convictions. The trial court accepted that recommendation and sentenced Carruth to death. The trial court also sentenced Carruth to life imprisonment for the attempted-murder, robbery, and burglary convictions.
In Carruth v. State, 927 So.2d 866 (Ala.Crim.App.2005), this Court affirmed Car-ruth’s convictions and sentences for capital *634 murder and attempted murder but reversed Carruth’s convictions for first-degree robbery and first-degree burglary on the grounds that those convictions violated double-jeopardy principles. Carruth failed to timely file a petition for a writ of certio-rari with the Alabama Supreme Court. On October 25, 2006, Carruth filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P., and amended the petition twice. The circuit court summarily dismissed several of Carruth’s arguments and held an evidentiary hearing on the remaining issues. After the evidentia-ry hearing, the circuit court' issued an order denying relief on the remaining claims in Carruth’s petition. This appeal follows.
In Carruth v. State, 927 So.2d 866, 869-70 (Ala.Crim.App.2005), this Court summarized the evidence as follows:
“In its sentencing order, the trial court made the following findings of fact, which are supported by the evidence, regarding the crimes:
“ ‘[I]n the evening and early morning hours of February 17 and February 18, 2002, the defendant, Michael David Carruth, and another person identified as Jimmy Lee Brooks, Jr.,[1] entered the home of Forest F. (Butch) Bowyer and his son William Brett Bowyer, while the home was occupied by both Forest F. (Butch) Bowyer and his son William Brett Bowyer. William Brett Bowyer was twelve (12) years of age.
“ ‘[Carruth] and [Brooks] entered the Bowyer home under the guise of being narcotics officers. The Bow-yers were handcuffed and taken to a remote road construction site in rural Russell County, the vicinity of the ultimate murder site, where the elder Bowyer was questioned concerning a safe [that, based on Brooks’s former employment with Bowyer, Carruth and Brooks believed Bowyer had containing $100,000]. The mode of transportation was a white Ford Crown Victoria that had a security shield between the front and back seats.
“ ‘The Bowyers were taken back to their home in order for Forest F. (Butch) Bowyer to get money for [Carruth] and [Brooks]. While there, [Carruth] slapped the elder Bowyer. [Brooks] found money[, approximately $47,000] and a .38 caliber Smith and Wesson revolver.
“ ‘[Carruth] and [Brooks] transported the Bowyers back to the road construction site, this time to the murder site. [Carruth] walked Forest F. (Butch) Bowyer away from the car and cut him on the [right side of his] neck [and he said, “that’s sharp, isn’t it?”] [Carruth] shortly thereafter cut Forest F. (Butch) Bowyer’s throat. [Brooks] also cut Bowyer’s throat. [Carruth] then sat on Forest F. (Butch) Bowyer and told him to “go to sleep.” It was during this period of time that the child, William Brett Bowyer, asked [Carruth] and [Brooks] not to hurt his daddy. The response to the child from [Brooks] was that he needed to be concerned about himself, not his dad.
“ ‘The defendant, Michael David Carruth, told [Brooks] “I’ve done one, now you do one.” At this point, [Brooks] shot the child in the head.. When a gurgling sound came from the child, [Brooks] commented “the little M.F. doesn’t want to die” and shot him two (2) more times in the head. The child, William Brett Bowyer, fell into a shallow grave [that Carruth and Brooks had dug earlier]. The father, Forest F. (Butch) Bowyer, was *635 thrown on top of the child. [Carruth] and [Brooks] laughed and joked as they threw dirt on the dead child and his father, covering them in the shallow grave.’
“(C. 704-06.) After Carruth and Brooks left the scene, [Forest] Bowyer dug himself out of the grave and flagged down a passing motorist for assistance. He later identified both Carruth and Brooks as the perpetrators of the crimes.”
In his petition, Carruth alleged numerous grounds for relief, most of which were summarily dismissed by the circuit court. However, Carruth does not raise arguments for many of those issues on appeal. Allegations that are not expressly argued on appeal are deemed to be abandoned and will not be reviewed by this Court. Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995).
We note that “ ‘even though this petition challenges a capital conviction and a death sentence, there is no plain-error review on an appeal from the denial of a Rule 32 petition.’” Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App.2003), quoting Dobyne v. State, 805 So.2d 733, 740 (Ala.Crim.App.2000). “ ‘In addition, “[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.” ’ ” Burgess v. State, 962 So.2d 272, 277 (Ala.Crim.App.2005), quoting Brownlee v. State, 666 So.2d at 93, quoting in turn State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App.1993).

Standard of Review

“The standard of review on appeal in a post conviction proceeding is whether the trial judge abused his discretion when he denied the petition.” Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992). “A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.” Miller v. State, 63 So.3d 676, 697 (Ala.Crim.App.2010). However, “when the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). In either instance, this Court may affirm the judgment of the circuit court for any reason, even if not for the reason stated by the circuit court.[2] See Reed v. State, 748 So.2d 231 (Ala.Crim.App.1999) (“If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition.”). Furthermore, Rule 32.7(d), Ala. R.Crim. P., provides that a circuit court may summarily dismiss a petition if “the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings.... ” With these principles in mind, we will address each of Carruth’s arguments.
I.
First, Carruth argues that the circuit court erred by summarily dismissing the ineffective-assistance-of-counsel claims he raised in paragraphs 35-39 of his petition. (C2. 21-23.)[3] In paragraphs 35-39, Car- *636 ruth asserted that, during jury selection, the State exercised its peremptory strikes in a racially discriminatory manner. Car-ruth then argued that trial counsel were ineffective for failing to challenge those strikes pursuant to the United States Supreme Court’s ruling in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Additionally, Carruth claimed that appellate counsel was ineffective for failing to take actions to preserve the Batson issue so that it could be addressed on appeal. Carruth also argued that trial counsel were ineffective for failing to object to the State’s for-cause challenge of one of the prospective jurors.
A.
In its order dismissing portions of Car-ruth’s petition, the circuit court held that the allegations in paragraphs 35-37 of the petition were insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P. (C. 187.) The circuit court also found that those allegations failed to state a claim for which relief could be granted. We agree.
Rule 32.3, Ala. R.Crim. P., provides that “[tjhe petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Furthermore, Rule 32.6(b), Ala. R.Crim. P., provides:
“Each claim in the petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
In discussing the specificity requirement of Rule 32.6(b), Ala. R.Crim. P., this Court has held:
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.
“Thus, a Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition. To the contrary, Rule 32.7(d), Ala. R.Crim. P.; provides for the summary disposition of a Rule 32 petition
“ ‘[i]f the court determines that the petition is not sufficiently specific [in violation of Rule 32.6(b) ], or is precluded [under Rule 32.2, Ala. R.Crim. P.], or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings .... ’
“ ‘ “Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition.” ’ Tatum v. State, 607 So.2d 383, 384 (Ala.Crim.App.1992), quoting Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992), quoting in turn Bishop v. State, 592 So.2d 664, 667 (Ala.Crim.App.1991) *637 (Bowen, J., dissenting); see also Rule 32.7(d), Ala. R.Crim. P.”
Boyd v. State, 913 So.2d 1113, 1125-26 (Ala.Crim.App.2003)(emphasis in original).
Paragraphs 35-37 of Carruth’s petition alleged that trial counsel were ineffective for failing to raise a Batson challenge to the State’s allegedly discriminatory jury selection process. As to claims of ineffective assistance of counsel, this Court has held:
“When reviewing claims of ineffective assistance of counsel, we apply the standard adopted by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel a petitioner must show: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by the deficient performance.
“ ‘Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” See Michel v. Louisiana, [350 U.S. 91] at 101 [ (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.’
“Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. 2052.
“ ‘ “ ‘This court must avoid using “hindsight” to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.’ ” Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App.1999), quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992). “[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052.’
“A.G. v. State, 989 So.2d 1167, 1171 (Ala.Crim.App.2007).”
Lee v. State, 44 So.3d 1145, 1154-55 (Ala.Crim.App.2009).
Additionally, an evidentiary hearing is not necessary in every case in which the petitioner alleges claims of ineffective assistance of counsel. The Alabama Supreme Court has stated:
“While it is true that our cases hold that a judge must conduct a hearing on a post-conviction petition that is meritorious on its face, a judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing on the effectiveness of *638 those attorneys based upon conduct that he observed.”
Ex parte Hill, 591 So.2d 462, 463 (Ala.1991). “[A] circuit judge who has personal knowledge of the facts underlying an allegation of ineffective assistance of counsel may summarily deny that allegation based on the judge’s personal knowledge of counsel’s performance.” Partain v. State, 47 So.3d 282, 286 (Ala.Crim.App.2008) (citing Ex parte Walker, 800 So.2d 135 (Ala.2000)). Here, the circuit judge who presided over Carruth’s postconviction proceedings was the same judge who presided over Carruth’s capital-murder trial and the same judge who sentenced Carruth to death.
In order to determine whether trial counsel were ineffective for failing to challenge the State’s peremptory strikes, we look first to the requirements set out in Batson. In evaluating a Batson claim, courts must follow a three-step process. As the United States Supreme Court explained in Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003):
“First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. [Batson v. Kentucky,] 476 U.S. [79,] 96-97 [(1986)]. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id,., at 97-98. Third, in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination. Id., at 98.”
Furthermore, this Court has held:
“In the first step of the process, the step at issue here, ‘[t]he party alleging discriminatory use of a peremptory strike bears the burden of establishing a prima facie case of discrimination.’ Ex parte Brooks, 695 So.2d 184, 190 (Ala.1997). ‘In addition to showing that the State used peremptory challenges to remove members of a cognizable group ... and relying upon the fact that peremptory strikes permit discrimination, a claimant also must show that these facts and any other relevant facts raise an inference that the prosecutor used his strikes in a discriminatory manner.’ Madison v. State, 718 So.2d 90, 101 (Ala.Crim.App.1997). ‘The facts and circumstances necessary to establish a prima facie ease of purposeful discrimination in the jury selection process will, of course, vary from case to case, depending on the particular facts and circumstances involved.’ Kidd v. State, 649 So.2d 1304, 1311 (Ala.Crim.App.1994). While it is true the striking of one person for a racial reason is a violation of the principles of Batson and grounds for reversal, see Williams v. State, 548 So.2d 501, 507 (Ala.Crim.App.1988), it is equally true that ‘[m]erely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case.’ Edwards v. State, 628 So.2d 1021, 1024 (Ala.Crim.App.1993).”
Lightfoot v. State, 152 So.3d 434, 438 (Ala.Crim.App.2012), reversed on other grounds by Ex parte Lightfoot, 152 So.3d 445, 438 (Ala.2013).
Accordingly, this Court must determine whether Carruth’s petition contained sufficient facts that, if true, established an inference of racially discriminatory jury selection. Furthermore, the petition must contain facts that, if true, established that counsel were deficient for failing to bring that to the attention of the trial court by raising a Batson challenge.
In his petition, Carruth asserted that there was a prima facie showing that the State exercised many of its peremptory challenges on the basis of race and argued that trial counsel were ineffective for fail *639 ing to raise an objection under Batson. Carruth argued that, had counsel objected, the trial court would have found a prima facie case of racially discriminatory jury selection and required the State to give race-neutral reasons for its peremptory challenges.
In paragraphs 35-37 of Carruth’s petition (C2. 21-22), as well as Issue III (C2. 41-46) of his petition which was incorporated by reference, Carruth supported this claim by alleging that the venire consisted of 41 prospective jurors of which 16 were black. According to Carruth, the State used 10 of its 15 peremptory strikes, or 66 percent, to remove prospective black jurors. Carruth also alleged that all but one of the State’s first nine strikes were used to remove blacks from the venire. Car-ruth contended that this pattern of strikes gave rise to an inference of discrimination. However, Carruth’s petition did not indicate the ultimate composition of the jury nor did it indicate whether the other six black veniremen served on the jury or whether they were struck by the defense. To be sufficiently specific, a petition, at a minimum, should indicate the ultimate composition of the petit jury.
Although Carruth did allege a number of facts in his petition, he still fell short of the specificity requirement of Rule 32.6(b), Ala. R.Crim. P., by failing to disclose the racial composition of the jury that was ultimately selected. Additionally, Carruth failed to provide thorough and specific details to support his other general allegations. We note that Carruth did not disclose the identities of all the black veniremen that he claimed were struck in a racially discriminatory manner. In his petition, Carruth only specifically identified five of the 10 veniremen that he claimed were struck solely on the basis of their race.
Carruth also failed to allege that trial counsels’ decision not to raise any Batson challenges was not sound trial strategy. A review of the record reveals that, at the conclusion of jury selection, Carruth’s trial counsel stated: “The defense does not have any Batson or J.E.B. challenges at all, Your Honor.” (Rl. 1403-04.) Thus, counsel did not simply forget or overlook the possibility of raising Batson challenges but affirmatively stated that they did not have any such challenges. Counsel could have been completely satisfied with the jury that was selected and not wished to potentially disturb its composition by making a Batson challenge. Because Carruth failed to even allege that counsels’ decision was not the result of sound trial strategy, his petition failed to meet the specificity requirement of Rule 32.6(b), Ala. R.Crim. P. Accordingly, the circuit court was correct to summarily dismiss the issues raised in paragraphs 35-37 of Carruth’s petition. See Rule 32.7(d), Ala. R.Crim. P.
Because we have determined that Car-ruth failed to meet the pleading requirements for the first prong of Strickland, i.e., that counsels’ performance was deficient, we need not address the prejudice requirement. See Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.”).
B.
In paragraph 38 of his petition, Carruth again claimed that trial counsel were ineffective for failing to object under Batson in order to preserve the issue for appeal and for failing to create a record of the racial composition of the jury venire. Carruth also appears to allege that appellate counsel was ineffective for failing to raise the issue on direct appeal. In support of these *640 arguments, Carruth incorporated Issue III of his petition as he did in paragraphs 35-37. The circuit court summarily dismissed the allegations in paragraph 38 as insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P.
In the previous subsection, we held that the allegations from paragraphs 35-37 and Issue III of his petition were insufficiently pleaded. Because Carruth failed to include any additional factual allegations in paragraph 38 of his petition, we similarly find that he failed to meet the specificity requirement of Rule 32.6(b), Ala. R.Crim. P. Accordingly, the circuit court did not err by summarily dismissing the issues raised in paragraph 38 of Carruth’s petition.
C.
In paragraph 39 of his petition (C2. 23), which incorporated Issue VI in his petition by reference (C2. 55-59), Car-ruth alleged that trial counsel were ineffective for failing to object to the trial court’s decision to grant the State’s challenge for cause against prospective juror D.R. According to Carruth, “counsel should have marshaled evidence and argued that the record did not adequately reflect that [D.R.] had views which would ‘prevent or ■substantially impair’ the performance of her duties as a juror in accordance with instructions and her oath.” (C2. 23.) The circuit court' summarily dismissed this claim as insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P. We agree.
Carruth failed to specifically state what evidence trial counsel could have “marshaled” that would have changed the trial court’s ruling nor did he plead any other facts that would have called the ruling into question. “A trial judge’s finding on whether or not a particular juror is biased is based upon determination of demeanor and credibility that are peculiarly within a trial judge’s province.” McNabb v. State, 887 So.2d 929, 945 (Ala.Crim.App.2001)(internal citations and quotations omitted). Therefore, we are unable to determine, from the petition, whether trial counsel were deficient for failing to object to D.R.’s exclusion.
Additionally, Carruth failed to demonstrate how'he was prejudiced by D.R. being excused for cause. Although he generally stated that her exclusion violated his right to a fair trial, his petition did not disclose any facts that, if true, would demonstrate that he was prejudiced. In order to meet the requirements of Strickland, a petitioner must establish both deficient performance and prejudice. Carruth did neither.
Additionally, Carruth failed to allege that trial counsels’ decision not to object to the State’s for-cause challenge against D.R. was not the product of trial strategy. D.R. may have been an unfavorable juror for the defense as well. Thus, counsels’ decision not to object to D.R.’s removal may have been sound trial strategy. Nevertheless, we are unable to determine this issue from Carruth’s petition. Accordingly, the circuit court was correct to summarily dismiss paragraph 39 of his petition. See Rule 32.7(d), Ala. R.Crim. P.
II.
In Issue II of Carruth’s brief on appeal, he argues that the circuit court erred by finding that the allegations in paragraphs 35-37 of his petition failed to state a claim for which relief could be granted. In the previous section, we determined that the allegations in those paragraphs did not meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. Accordingly, we need not address this issue. As noted, this Court may affirm a circuit court’s ruling on a postconviction petition if it is correct for any reason. See Lee v. State, 44 So.3d 1145, 1149 (Ala.Crim.App.2009).
*641 III.
Next, Carruth argues that the circuit court erred by summarily dismissing the arguments from paragraph 52 of his petition (C2. 29), as well as the arguments from Issue VII (C2. 59-63), which Carruth incorporated by reference. In those paragraphs, Carruth claimed that trial counsel were ineffective for failing to object to what Carruth asserted were numerous instances of prosecutorial misconduct. The circuit court dismissed all of the claims in paragraph 52 as insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P., and for failing to state a claim for which relief could be granted under Rule 32.7(d), Ala. R.Crim. P.
A.
First, Carruth asserted that the State committed prosecutorial misconduct during its closing argument when, he said, it made several assertions of facts that were not in evidence. Specifically, Car-ruth claimed that the prosecutor “repeatedly referred] to the granular substance found at the crime scene as lime.” (C2. 60.) Additionally, Carruth contended that the prosecutor wrongly asserted that two knives were used in the crime. According to Carruth, those factual assertions were not in evidence and were unduly prejudicial. Therefore, he said, trial counsel were ineffective for failing to object to those references.
A review of the record reveals that, during the State’s case-in-chief, Tommy Pell, a deputy with the Russell County Sheriffs Department, testified that he took soil samples from the grave in which the victims were thrown. Pell stated that there was a “grayish granule type substance” mixed with the dirt that he believed “to be lime or something possibly to cover up the bodies, the odor of the bodies.” (Rl. 1769.)
During closing arguments, the prosecutor made the following statement: “[Car-ruth and Brooks] go over and get some bags, and, again, ladies and gentlemen, we submit, as Officer Pell told you, we think that was the lime in those bags.” (Rl. 2132-33.) Thus, the record refutes Car-ruth’s contention. Officer Pell testified that he believed that the substance he discovered was lime and the prosecutor stated that “we think that was lime in those bags.” Accordingly, there was nothing improper about the prosecutor’s comment and trial counsel could not have been ineffective for failing to object. See Patrick v. State, 680 So.2d 959, 963 (Ala.Crim.App.1996)(holding that counsel would not be ineffective for failing to assert a meritless claim).
Similarly, the record supports the prosecutor’s comment regarding the existence of two knives. “A prosecutor’s statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury.” Roberts v. State, 735 So.2d 1244, 1253 (Ala.Crim.App.1997), aff'd, 735 So.2d 1270 (Ala.), cert. denied, 528 U.S. 939, 120 S.Ct. 346, 145 L.Ed.2d 271 (1999). “ ‘During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.’ ” Reeves v. State, 807 So.2d 18, 45 (Ala.Crim.App.2000), cert. denied, Reeves v. Alabama, 534 U.S. 1026, 122 S.Ct. 558, 151 L.Ed.2d 433 (2001), quoting Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Crim.App.1987), reversed on other grounds, Ex parte Rutledge, 523 So.2d 1118 (Ala.1988).
Testimony at trial revealed that both Carruth and Brooks used a knife in an attempt to murder Forest Bowyer by cutting his throat. Thus, it was a legitimate inference for the prosecutor to argue that *642 the perpetrators each used a different knife. Accordingly, counsel was not ineffective for failing to raise a meritless objection. See Patrick v. State, 680 So.2d 959, 963 (Ala.Crim.App.1996).
Because Carruth’s ineffective-assistance-of-counsel claims based on alleged assertions of facts not in evidence are refuted by the record, the circuit judge, who was familiar with the facts after he presided over Carruth’s trial, was correct to summarily dismiss the allegations for failing to state a claim for which relief could be granted. See Rule 32.7(d), Ala. R.Crim. P.
B.
Next, Carruth asserted that the prosecutor committed prosecutorial misconduct by telling the jury that the mayor was present in the courtroom. According to Carruth, that statement put “undue pressure on the jury to find Mr. Carruth guilty because of official interest in the case, rendering the trial unfair in violation of Mr. Carruth’s right to due process.” (C2. 60.) However, this claim failed to meet the specificity requirement of Rule 32.6(b), Ala. R.Crim. P., and failed to state a claim for which relief could be granted.
Carruth made only a bare assertion that the prosecutor’s reference to the mayor’s presence put undue pressure on the jury. He failed to plead any specific facts suggesting that the jury was actually influenced by this isolated comment. Accordingly, Carruth failed to plead facts that, if true, would have entitled him to relief. Therefore, the circuit court was correct to summarily dismiss this claim. See Rule 32.7(d), Ala. R.Crim. P.
Moreover, a review of the record reveals that the comment in question was made during the State’s rebuttal to Carruth’s closing argument and did not suggest that there was additional “official interest” in Carruth’s case. During Carruth’s closing argument, defense counsel suggested that Carruth was actually trying to prevent the victims from being killed by telling Butch Bowyer to “go to sleep” after cutting Bow-yer’s throat. (Rl. 2165.) The prosecutor was merely responding to that suggestion by stating: “You know, Pm glad the may- or’s here today. Listening to [defense counsel], I think maybe he ought to go back to the council on Tuesday and recommend a proclamation for Mr. Carruth for being such a fine fella, a real hero, that was going to save this man’s life that he just threw in that hole.” (Rl. 2205.) Accordingly, the record does not support Carruth’s claim and the circuit court was correct to summarily dismiss it.
C.
Next, Carruth asserted that the prosecutor committed misconduct by “telling the jury during his closing argument that death would not be a possible punishment unless the jury convicted Mr. Car-ruth of capital murder.” (C2. 59.) Car-ruth argued that, although counsel raised an objection to that comment, they were ineffective for failing to obtain a ruling. Carruth contended that the prosecutor’s comment created a risk that the jury convicted Carruth of the capital offenses “because they were worried that otherwise he would not be punished severely enough, rather than because they were convinced of his guilt beyond a reasonable doubt.” (C2. 61.) Furthermore, Carruth argued that the statement was highly prejudicial “because the jury cannot consider punishment during the guili/innocence phase.” (C2. 61.)
However, Carruth failed to allege that the jury was actually affected by this statement. Rather, Carruth made a bare allegation that this comment rendered his trial “fundamentally unfair in violation of his right to due process.” (C2. 61.) For the reasons stated in the previous subsec *643 tion, this claim was not sufficiently specific. Accordingly, the circuit court was correct to summarily dismiss it. See Rule 32.7(d), Ala. R.Crim. P.
Moreover, a review of the record reveals that the prosecutor did not ask the jury to consider punishment during the guilt phase as Carruth claimed. During his closing argument, the prosecutor stated:
“I’m going to ask you to convict this man of those capital counts, the only punishment for which are life without parole or the death penalty, something that you’re not even considering now, but if you convict him of those capital counts, we’ll get to that phase later. Any other charge other than those four capital counts does not carry that punishment.”
(Rl. 2208-09.) Thus, the record refutes Carruth’s contention that the jury was asked to consider punishment during its . guilt-phase deliberations. Accordingly, the circuit court was correct to summarily dismiss this claim.
IV.
Next, Carruth argues that the circuit court erred by summarily dismissing the claims in paragraphs 71-76 of his petition (C2. 38-40), as insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P., and for failing to state a claim under Rule 32.7(d), Ala. R.Crim. P.
A.
In paragraph 71 of his petition, Carruth claimed that trial counsel were ineffective for failing to make an opening statement during the penalty phase of his trial. Carruth alleged that, “[b]y waiving opening argument, the defense missed an important opportunity to explain to the jury why their client should not be sentenced to death.” (C2. 38.) However, Carruth did not assert what arguments he believed counsel should have made in an opening statement for his sentencing phase. Additionally, Carruth did not claim that, had counsel made such an argument, he would not have been sentenced to death. Rather, Carruth only claimed that choosing not to present an opening argument was not justified by any reasonable strategy.
Even assuming that all of the factual allegations in paragraph 71 are true, the circuit court could not have determined that Carruth was entitled to relief because of ineffective assistance of counsel under Strickland. Accordingly,'the circuit court was correct in finding that Carruth failed to meet the specificity requirement of Rule 32.6(b), Ala. R.Crim. P.
B.
Carruth also claimed, in ■ paragraph 72 of his petition, that counsel were ineffective during closing arguments of the penalty phase when, he says, counsel “made the damaging argument to the jury that it is understandable if the Bowyer family wants to kill Mr. Carruth.” (C2. 38.) Carruth argued that counsel’s statement “suggested that revenge against Mr. Carruth was proper and made it easier for the jury to vote for death, because even Mr. Carruth’s own counsel thought that was understandable.” • (C2. 38.)
However, the record does not support Carruth’s characterization of counsel’s statement. During his closing argument at the penalty phase, defense counsel stated:
“Someone said when I first got involved in this case, it was in the Amoco over by the Super Wal-Mart, some people talking said, if I was that boy’s daddy, those two wouldn’t make it to trial. And I can understand that. I can understand that. And I can understand any feelings that the Bowyer family has, any of those same feelings that they have, but we didn’t know all the facts then.
*644 “This case was being tried in the media. Everybody assumed that they didn’t know. There were rumors that Brooks shot Brett, Michael David Car-ruth shot Brett, but we all know the facts who shot William Brett Bowyer, and that was Jimmy Lee Brooks. So we’re asking y’all to take that into consideration in your verdict. Can you sentence the man, who actually didn’t pull the trigger, who actually did not kill little William Brett Bowyer, to death?”
(Rl. 2295-96.) A review of counsel’s statement reveals that counsel was not suggesting that revenge against Carruth was understandable. Rather, counsel stated that he could understand how people could feel that way before the evidence was presented at trial. Counsel then argued that death was not the appropriate sentence in light of the evidence that Carruth was not the one who actually shot Brett Bowyer. Accordingly, Carruth’s argument was without merit and the circuit court was correct to summarily dismiss it for failing to state a claim for which relief could be granted. See Rule 82.7(d), Ala. R.Crim. P.
C.
In paragraph 73 of his petition Carruth asserted that trial counsel were ineffective during the penalty phase for failing to object when the prosecutor urged the jury to rely on his 25 years of experience in asking for the death penalty. However, the record directly contradicts that assertion. During closing arguments of the penalty phase, the prosecutor stated: “I do not make it a practice, and have not made it a practice over the last twenty-five years, to beg a jury for the death penalty. I won’t do that today.” (Rl. 2290.) Thus, the prosecutor did not urge the jury to rely on his experience in asking for the death penalty.
Carruth also asserted that counsel should have objected when the prosecutor asked the jury to put themselves in the place of the victim; when the prosecutor referred to Carruth as an animal; and when the prosecutor quoted the Bible. However, Carruth did not allege why he believed these statements were improper nor did he state the grounds on which he believed counsel should - have objected. Additionally, Carruth failed to plead any facts to suggest how these statements prejudiced him. Carruth merely alleged that the statements were improper and prejudicial. Such a bare allegation is insufficient to meet the pleading and specificity requirements of Rules 32.3 and 32.6(b), Ala. R.Crim. P. Accordingly, the circuit court was correct to summarily dismiss the claims in paragraph 73 of Car-ruth’s petition. See Rule 32.7(d), Ala. R.Crim. P.
D.
In paragraph 74, as well as Issues XI(A), XI(B), XV, IX(C), and XIV of his petition, which were incorporated by reference, Carruth claimed that counsel were ineffective for failing to object to several of the trial court’s jury instructions.
1.
First, Carruth asserted that the trial court improperly instructed the jury when it stated: “If an accused acquires a gun as loot during commission [of a burglary] then he is considered to be armed with a deadly weapon.” (C2. 72), quoting (Rl. 2232.) Carruth claimed that counsel were deficient for failing to object and argued that, but for counsels’ deficient performance, Carruth would not have been sentenced to death.
However, Carruth’s underlying claim is meritless. This Court has held: “If an accused - or an accused’s accomplice acquires a gun as loot during commission of a burglary, the accused, for purposes of § 13A-7-5 [first-degree burglary], is considered to be armed with a deadly weap *645 on.” Miller v. State, 675 So.2d 534, 536, (Ala.Crim.App.1996), citing Pardue v. State, 571 So.2d 333 (Ala.1990). Carruth cited no cases to the contrary in his petition. Thus, there was nothing objectionable about the trial court’s instruction and counsel were not ineffective for failing to raise a baseless objection. See Patrick v. State, 680 So.2d at 963.
2.
Next, Carruth asserted that the trial court’s instruction on the “heinous, atrocious, or cruel” aggravating circumstance was unconstitutionally vague and overbroad. (C2. 39.) Specifically, Carruth argued that the “set the crime apart from the norm of capital offenses” language rendered it unconstitutionally vague because, he said, the jury was given no instruction as to what a normal capital offense entailed. According to Carruth, trial counsel were ineffective for failing to raise an objection to this instruction.
However, this Court has held that such language is not unconstitutional. In Broadnax v. State, 825 So.2d 134, 210 (Ala.Crim.App.2000), this Court approved of jury instructions that wfere nearly identical to the instructions in the present case. The jury instructions in Broadnax contained the “set the crime apart from the norm of capital offenses” language that Carruth claimed was improper. Because the trial court’s instructions were not improper, counsel was not ineffective for fading to raise a meritless objection. See Patrick v. State, 680 So.2d at 963.
3.
Carruth also asserted that the trial court erred by telling the jury that their verdict at the penalty phase was merely a recommendation and by not informing them that finding Carruth guilty of robbery-murder would automatically make him eligible for the death penalty. Car-ruth argued that trial counsel were ineffective for failing to raise an objection. However, Carruth’s underlying argument as to why such an instruction was improper is based on his contention that the Alabama Supreme Court’s decision in Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), “imper-missibly eases the State’s burden of proving that the death penalty is appropriate by ensuring that the jury is unaware that its guilt-innocence phase finding authorizes the trial judge to impose the death penalty without additional process.” (C2.. 81.) However, Waldrop has not been overruled. Accordingly, the trial court’s instructions were not improper and counsel were not ineffective for failing to raise a meritless objection. See Patrick v. State, 680 So.2d at 963.
4.
Next, Carruth asserted that the trial court gave erroneous instructions regarding the balancing of the aggravating and mitigating circumstances. According to Carruth, counsel were ineffective for failing to object to this instruction. In his petition, Carruth incorporated Issue IX(C) by reference. However, this appears to be a typographical error because issue IX discusses improper testimony during the guilt phase of the trial and does not contain a subsection C. (C2. 65.) Issue XI(C), on the other hand, discusses the issue of the allegedly improper jury instruction. (C2. 74.)
In Issue XI(C), Carruth asserted that the following instruction was misleading: “if ... you determine that the mitigating circumstances outweigh any aggravating circumstances that exist ... your verdict would be to recommend punishment of life imprisonment without the possibility of parole .... ” (Rl. 2319.) According to Car-ruth, this instruction would have improperly led a jury who determined that the aggravating circumstances and the mitigating circumstances were equally bal *646 anced to believe that it must sentence the defendant to death.
However, the argument that Carruth raised in Issue XI(C) of his petition is identical to the argument raised by the petitioner in Ex parte McNabb, 887 So.2d 998 (Ala.2004). In McNabb, the Alabama Supreme Court held that such language is not improper as long as the jury is “not invited to recommend a sentence of death without finding any aggravating circumstances.” 887 So.2d at 1004. A review of the record reveals that the trial court specifically instructed the jury that “if, after a full and fair consideration of all the evidence in this case, you are convinced beyond a reasonable doubt that at least one aggravating circumstance does exist and that the aggravating circumstance outweighs the mitigating circumstances, your verdict should be” that Carruth be sentenced to death. (Rl. 2318-19.) The jury in the present case was not instructed that it could sentence Carruth to death without finding at least one aggravating circumstance. Accordingly, counsel were not ineffective for failing to raise a baseless objection. See Patrick v. State, 680 So.2d at 963.
5.
Finally, Carruth claimed that the trial court erred by charging the jury that it “must ‘double count’ the robbery, burglary, and kidnaping found at the guilt phase as aggravating factors.” (C2. 40.) According to Carruth, trial counsel were ineffective for failing to object to this instruction. However, in Issue XIV, which Carruth incorporated by reference, Carruth stated that the “trial court erred in allowing kid-naping, burglary, and robbery to be considered both as aggravating circumstances and as elements of capital murder over defense objection.” (C2. 78) (emphasis added). Thus, according to Carruth’s petition, trial counsel did object to this jury charge and, consequently, did not render deficient performance. Accordingly, this claim is meritless on its face and the circuit court was correct to summarily dismiss it. Carruth raised a nearly identical claim in paragraph 75 of his petition. For the reasons stated in this subsection, the circuit court was correct to summarily dismiss the allegation in that paragraph as well.
Because the underlying claims in paragraph 74 of Carruth’s petition were merit-less, trial counsel could not have been ineffective for failing to raise objections. Therefore, Carruth failed to state claims for which relief could be granted and the circuit court was correct to summarily dismiss them. See Rule 32.7(d), Ala. R.Crim. P.
E.
In paragraph 76 of his petition which incorporated Issue XVIII by reference, Carruth claimed that trial counsel were ineffective for failing to challenge Alabama’s method of execution as a violation of the Eighth Amendment to the United States Constitution. However, the Alabama Supreme Court has held that “Alabama’s use of lethal injection as a method of execution does not violate the Eighth Amendment to the United States Constitution.” Ex parte Belisle, 11 So.3d 323, 339 (Ala.2008). Thus, Carruth’s underlying claim was meritless and trial counsel were not ineffective for failing to raise a meritless claim. See Patrick v. State, 680 So.2d at 963. Accordingly, Car-ruth failed to state a claim for which relief could be granted and the circuit court was correct to summarily dismiss it. See Rule 32.7(d), Ala. R.Crim. P.
V.
Next, Carruth argues that the circuit court erred by summarily dismissing the claims raised in paragraphs 78-81 of his *647 petition as insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P. In paragraphs 78-81, Carruth claimed that his appellate counsel was ineffective for failing to raise certain claims on direct appeal and failing to file an adequate motion for a new trial. (C2.41-44.)
A.
In his petition, Carruth asserted that “appellate counsel was plainly ineffective for failing to raise a number of meritorious issues in Mr. Carruth’s appellate brief that, if raised, would have undermined the validity of Mr. Carruth’s conviction and sentence.” (C2. 42.) Carruth then listed 12 issues and incorporated by reference the substantive arguments for each issue found elsewhere in his petition.
In order to prevail on a claim of ineffective assistance of appellate counsel, a Rule 32 petitioner must show that appellate counsel was deficient for failing to raise meritorious issues on direct appeal and that, but for counsel’s failure, the outcome of the petitioner’s appeal would have been different. Brown v. State, 663 So.2d 1028, 1035 (Ala.Crim.App.1995).
Carruth claimed that appellate counsel was ineffective for failing to raise several issues that Carruth had argued elsewhere in his petition. Carruth incorporated the following arguments by reference:
“the State’s illegal and discriminatory use of its peremptory challenges in violation of Batson (issue III); the trial court’s improper denial of Mr. Carruth’s motion for a change of venue (issue IV); trial court error in allowing the use of prejudicial evidence of pending charges (issue V); trial court errors during jury selection including the trial court’s refusal to excuse jurors who were unfit to serve, improper excusal of a juror for cause, and; improper death-qualification of the jury (Issue VI); prosecutorial misconduct (Issué VII); trial court error in relying on hearsay in sentencing (Issue VIII); trial court error in permitting the State to elicit and argue testimony regarding nonconviction alleged bad acts (Issue IX); errors in the indictment, including the failure to allege an essential element of the crime and material variances between the indictment, the proof at trial, and the jury instructions (Issue XI); trial court error in double-counting kidnaping, burglary, and robbery as aggravating circumstances in the penalty phase (Issue XIV); the invalidation of Alabama’s capital sentencing under Ring v. Arizona (Issue XV); trial court error in improperly admitting prejudicial photographs (Issue XVI); and trial court error in denying the recusal motion (Issue XVII).”
(Carruth’s brief, at 56-57.)
However, Issues IV and XVII, regarding the alleged improper denial of Car-ruth’s motion for a change of venue and motion for the trial judge to recuse respectively, were raised by appellate counsel in Carruth’s direct appeal. Accordingly, those arguments are refuted by the record. See Carruth v. State, 927 So.2d 866 (Ala.Crim.App.2005). Additionally, in Section I of this opinion, this Court determined that the allegations in Issue III of Carruth’s petition, regarding trial counsels’ failure to raise a Batson challenge, were insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P. Carruth failed to make any additional allegations in paragraph 79 of his petition. Therefore, the circuit court was correct to summarily dismiss Carruth’s ineffective-assistance-of-appellate-counsel claim as it related to Issue III in his petition. We will now address the remaining issues.
1.
In Issue V of his petition, Carruth argued that the trial court erred by ruling *648 that Carruth could, if he chose to testify, be cross-examined regarding pending murder charges in Lee County. Carruth argued that this ruling denied him his right to testify and that appellate counsel was ineffective for failing to raise this issue on direct appeal. However, a review of the record reveals that Carruth only objected to being cross-examined regarding the details of the alleged crimes from Lee County. Defense counsel stated: “I agree that the D.A. can ask if Mr. Carruth has been charged or indicted, but I don’t agree that the State can go into details of that crime.” (Rl. 2015.) Furthermore, the State sought only to ask questions regarding the details of those crimes if “that door opens up about those charges in Lee County.” (Rl. 2020.) The trial court ruled that Car-ruth would only be subject to cross-examination regarding the details of those crimes “[i]f the door is opened....” (Rl. 2020.) Accordingly, the record refutes this claim.
Additionally, Carruth argued that the trial court erred by allowing Renita Ward to testify “that she had been looking for evidence related to the Ratcliffs, making reference to the widely reported Lee County murders and connecting them to Mr. Carruth.... ” (C2. 58.) However, the record reflects that, during Ward’s testimony, the following exchange occurred:
“[Ward]: I was specifically asked to look for any auto dealers, used car dealers, the name Ratcliff, any
[[Image here]]
“[Defense Counsel]: Objection, Your Honor. I’m just going to make an objection to that, and we can take it up later.
“THE COURT: All right.”
(Rl. 1882.) The prosecutor moved on and never mentioned the topic of the Ratcliff murders again. Therefore, Ward never gave any testimony that connected Car-ruth to the murders in Lee County. Accordingly, this argument is also refuted by the record. Because each of the arguments from Issue V of Carruth’s petition were refuted by the record, appellate counsel was not ineffective for failing to raise them on direct appeal. See Patrick v. State, 680 So.2d at 963. Accordingly, Carruth failed to state a claim for which relief could be granted and the circuit court did not err by summarily dismissing it.
2.
In Issue VI of Carruth’s petition, he argued that the trial court made several errors during jury selection. First, Car-ruth claimed that the trial court erred by refusing to grant his for-cause challenge regarding juror S.C. Carruth quoted isolated statements that S.C. made in voir dire regarding her ability to be fair. However, in none of those statements did S.C. unequivocally indicate that she could not be fair or that she had a fixed opinion about Carruth’s guilt or innocence. See § 12-16-150(7), Ala.Code 1975 (“it is good ground for challenge of a juror by either party ... [t]hat he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict”). Accordingly, this claim was meritless.
Second, Carruth argued that the trial court erroneously granted the State’s for-cause challenge of juror D.R. However, in Section 1(C) of this opinion, we determined that the claim in this paragraph was insufficiently pleaded under Rule 32.6(b), Ala. R.Crim. P. Carruth offered no additional factual allegations in paragraph 79 of his petition. Therefore, the circuit court was correct to summarily dismiss Carruth’s ineffective-assistance-of-appellate-counsel claim as it related to Issue VI(B) in his petition.
Finally, Carruth argued that the trial court erred by death-qualifying the *649 jury. However, the Supreme Court of the United States has upheld the constitutionality of death-qualifying a jury. See Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Furthermore, in Davis v. State, 718 So.2d 1148 (Ala.Crim.App.1995), this Court held:
“A jury composed exclusively of jurors who have been death-qualified in accordance with the test established in Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), is considered to be impartial even though it may be more conviction prone than a non-death-qualified jury. Williams v. State, 710 So.2d 1276 (Ala.Cr.App.1996). See Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Neither the federal nor the state constitution prohibits the state from death-qualifying jurors in capital cases. Id.; Williams; Haney v. State, 603 So.2d 368, 391-92 (Ala.Cr.App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).”
718 So.2d at 1157 (footnote omitted). Therefore, this claim is meritless and counsel was not ineffective for failing to raise it on appeal. See Patrick v. State, 680 So.2d at 963. Accordingly, Carruth failed to state a claim for which relief could be granted and the circuit court was correct to summarily dismiss it.
3.
Next, Carruth contended that appellate counsel was ineffective for failing to argue that the State engaged in prosecutorial misconduct during its closing argument. Carruth incorporated by reference the claims that he raised in Issue VII of his petition. However, most of the claims raised in Issue VII of Carruth’s petition have already been addressed. In paragraphs 111 and 113 of his petition, Carruth claimed that the prosecutor repeatedly referred to facts that were not in evidence during his closing argument; that the prosecutor improperly pointed out that the mayor was present; and that the prosecutor improperly commented that death would not be a possible punishment unless the jury convicted Carruth of capital murder. Those claims were found to be merit-less in Section II of this opinion. Similarly, the claims raised in paragraph 115 were meritless for the reasons stated in Section III(C) of this opinion. Accordingly, appellate counsel was not ineffective for failing to raise those issues 'on direct appeal and the circuit court was correct to summarily dismiss them. See Rule 32.7(d), Ala. R.Crim. P.
In paragraph 112 of his petition, Carruth claimed that the prosecutor introduced improper victim-impact testimony during the guilt phase by admitting photographs of Brett and Forest Bowyer into evidence. Carruth argued that appellate counsel was ineffective for failing to raise that issue on appeal.
However, the photographs in question depicted Brett Bowyer when he was alive. They were not crime scene photographs, nor were they photographs from the autopsy. Carruth failed to explain why a photograph of the victims when they were alive constituted victim impact evidence. Rather, Carruth merely asserted that the photographs “served no purpose other than to elicit the passion and sympathy of the jury.” (C2. 60.) Carruth failed to state what arguments he believes appellate counsel could have raised that would have changed the outcome of Carruth’s direct appeal. Additionally, Carruth failed to allege any facts that, if true, would demonstrate that he was prejudiced by appellate counsel’s decision not to include this issue on appeal. Accordingly, Carruth did not meet the pleading and specificity requirements of Rules 32.3 and 32.6(b), Ala. R.Crim. P.
*650 Similarly, Carruth failed to state what arguments he believed appellate counsel could have made regarding the claims from paragraph 114 of Carruth’s petition in which Carruth claimed that the prosecutor elicited testimony from a witness that connected him to another murder in a nearby county. Carruth merely asserted that this was presumptively prejudicial and that appellate counsel should have raised this issue on direct appeal. That bare assertion was insufficient to meet the pleading and specificity requirements of Rules 32.3 and 32.6(b), Ala. R.Crim. P. Additionally, Carruth failed to allege facts that, if proven true, would have demonstrated that arguing these issues on direct appeal would have undermined the validity of his conviction and sentence.
Because the claims from Issue VII of Carruth’s petition were either meritless, deficiently pleaded, or both, the circuit court did not err by summarily dismissing the ineffeetive-assistance-of-appellate-counsel claim that incorporated those arguments. See Rule 32.7(d), Ala. R.Crim. P.
"4.
As to the remaining issues listed in paragraph 79 of Carruth’s petition, Car-ruth failed to state whether any of those issues were preserved for appellate review and, if they were not, whether each claimed error rose to the level of plain error. Without such supporting factual allegations, it is impossible to determine, from the petition, whether appellate counsel was ineffective for failing to raise those issues on appeal. Accordingly, the circuit court was correct to summarily dismiss the claims as insufficiently pleaded under Rules 32.3 and 32.6(b), Ala. R.Crim. P.
Furthermore, Carruth failed to allege that counsel’s decision not to include those 12 issues was not the product of a sound strategy. This Court has held:
“Counsel need not raise and address each and every possible argument on appeal to ensure effective assistance of counsel. Indeed, the process of “winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.’ Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). See also, Johnson v. State, 612 So.2d 1288, 1303 (Ala.Crim.App.1992).”
Brown v. State, 663 So.2d at 1035. Accordingly, Carruth failed to allege sufficient facts to demonstrate that appellate counsel was deficient, see Rule 32.6(b), Ala. R.Crim. P., and the circuit court was correct to summarily dismiss the ineffective-assistance-of-appellate-counsel claims raised in paragraphs 78 and 79 of Car-ruth’s petition. See Rule 32.7(d), Ala. R.Crim. P.
B.
Carruth also claimed that appellate counsel was ineffective for failing to “cite a single ground in support of’ Car-ruth’s motion for a new trial. However, the record directly refutes this claim. On July 7, 2004, appellate counsel filed a motion for a new trial in which he stated the following:
“The defendant’s attorney visited the defendant in prison in Atmore, Alabama and after discussions with him, determined initial rationale for his Motion for New Trial to be as follows:
“1. It is questionable that the trial court judge, the Hon. Albert L. Johnson, should have stayed on the case, especially in light of his prior contact with the defendant.
“2. There was not sufficient evidence to convict on the death penalty cause of action.
*651 “3. The weight of the evidence was against a jury verdict in favor -of the State.”
(C3. 61.)[4] Accordingly, appellate counsel did allege grounds in support of Carruth’s motion for a new trial. Therefore, the claim in paragraph 80 of his petition was meritless and the circuit court was correct to summarily dismiss it. See Rule 32.7(d), Ala. R.Crim. P.
C.
In paragraph 81 of his petition, Carruth claimed that “[t]hese errors, individually and collectively, denied Mr. Car-ruth the effective assistance of counsel.... ” (C2. 44.) However, Alabama does not recognize a “cumulative effect” analysis for ineffective-assistance-of-counsel claims. See Mashburn v. State, 148 So.3d 1094, 1117 (Ala.Crim.App.2013), quoting Taylor v. State, 157 So.3d 131 (Ala.Crim.App.2010), quoting in turn Brooks v. State, 929 So.2d 491, 514 (Ala.Crim.App.2005) (“ ‘ “We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.” ’ ”). Accordingly, this claim was meritless and the circuit court was correct to summarily dismiss it. See Rule 32.7(d), Ala. R.Crim. P.
VI.
Next, Carruth argued that he was entitled to a new trial because, he said, the jury engaged in premature deliberations “each and every day and night of his trial.” (C. 194.) The circuit court denied this claim after an evidentiary hearing. On appeal, Carruth argues that the circuit court’s factual findings were contradicted by evidence presented at the hearing and that the ruling was an abuse of discretion.
In his petition, Carruth asserted that several jurors discussed the evidence and whether Carruth should get the death penalty prior to beginning deliberations. Car-ruth alleged that these discussions took place during breaks and at night while the jury was sequestered at a local motel. Carruth claimed that several of the jurors would gather in one of the hotel rooms every night to play a board game called “Rummy Cube.” (C. 197.) According to Carruth, those jurors had discussions regarding the case in violation of the trial court’s instructions. He argued:
“During these premature deliberations, the group of jurors discussed the evidence that they had heard that day in court. They also discussed whether Mr. Carruth was guilty of the crime. They also discussed whether Mr. Carruth should get the death penalty. Finally, the jurors learned how each other felt about Mr. Carruth’s guilt and penalty. The jurors found it helpful to discuss the day’s evidence while it was fresh in their minds, and they found their premature deliberations helpful to their eventual, lawful deliberations. On information and belief, the jurors who were involved in the premature deliberations at the hotel were [J.H.] (the foreman of the jury), [S.E.], [R.M.], [V.W.], and [B.T.]
[[Image here]]
“... [A]ll of the jurors, including the alternates, participated in this premature deliberation, at the hotel and/or in the jury room. However, because Judge Johnson admonished the jury on so many occasions not to engage in premature deliberation, and because there was no indication from the jurors that they had been prematurely deliberating, Mr. Carruth’s trial attorneys did not know and should not have known of the misconduct, and therefore could not have raised the issue. The misconduct *652 was only discovered during post-conviction proceedings.”
(C. 197-98.)
Carruth argued that he is entitled to a new trial because, he said, the premature deliberations occurred before Carruth had the opportunity to present evidence or arguments. Therefore, he argued, several of the jurors had already made up their minds regarding Carruth’s guilt before formal deliberations began.
At the evidentiary hearing, Carruth presented testimony from two jurors and one alternate juror. Juror R.M. testified that she remembered playing board games with other jurors at night in one of the hotel rooms. However, when asked if any of the jurors discussed the case during those gatherings, R.M. replied, “Absolutely not. The judge told us not to discuss it. We did not.” (R. 9.) R.M. also stated that there were no discussions regarding the evidence during breaks or at any other time before formal deliberations began.
B.T., an alternate juror, testified that she remembered some discussions about the evidence while the jury was on breaks during the guilt phase of the trial. However, B.T. stated that she did not recall “anybody say[ing] that [Carruth] was guilty, that he needs to be sentenced or anything to that effect.” (R. 23.) B.T. testified that the discussions essentially involved comments regarding what the evidence was and not whether the evidence established Carruth’s guilt.
Juror J.H. testified that he served as the foreman on Carruth’s jury. Carruth introduced a statement that was purportedly given by J.H. The statement was handwritten by a paralegal who worked for Carruth’s Rule 32 counsel and was signed by J.H. The statement begins as follows:
“This is the statement of [J.H.], D.O.B. 1/21/69 taken on Sunday, January 14, 2007 at [J.H.’s address] by Sarah Forte and Matt Butler, paralegals for Glenn Davidson, attorney for Michael Carruth.”
(C. 397.) The statement continued, in pertinent part:
“When we sat in the room at night playing rummy cube, we talked about what we heard in court. It was a really good way to discuss the evidence at the end of each day. I’m glad we were able to have predeliberation at night because we could talk about the evidence we heard that day. It was better to talk about the evidence while we were playing rummy cube at the hotel because then we wouldn’t forget anything by the end of the trial.
“When I say that we played rummy cube and talked about the evidence at night, I mean after dinner on the third and fourth days of the trial. When we played rummy cube and talked about the trial on the third and fourth nights of the trial, we talked about what evidence made Michael Carruth guilty of capital murder. When we played rummy cube and talked about the trial on the third and fourth nights of the trial we also talked about what sentence Michael Carruth should get.
‘When we played rummy cube and talked about the case, not all of the jurors were in the hotel room. I think it was good to have our predeliberations because we could discuss the evidence when it was fresh in our memory from that day. It was also good to have our predeliberations because then we kind of knew how each other felt about Michael Carruth’s guilt before our deliberation at court. When I say predeliberations, I mean when we sat in the motel room on the third and fourth days of the trial playing rummy cube and talking about the case.”
(C. 399-401.)
However, when J.H. testified at the evi-dentiary hearing, he stated that the discus *653 sions regarding the evidence were not in-depth discussions. J.H. stated: “we might have mentioned that a piece of evidence was unusual or something we didn’t expect. And I think, for example, one of [the jurors] did say, I wasn’t expecting to see an image of the boy at the morgue.... ” (R. 120.) J.H. further explained:
“[The conversations regarding the evidence] weren’t cohesive in the end to make a full thought or angle on a decision to be made. It was one comment about maybe the video and a comment about something totally unrelated to the video, so it wasn’t like an end to end, pieced together, series of events to make a decision out of. So it was really never debated to an extent.”
(R. 124.) When asked about the statement taken by Carruth’s counsel’s paralegals, J.H. stated that he remembered being interviewed but did not recall the discussion.
On cross-examination, J.H. stated that he did not actually write the statement. Rather, one of the paralegals wrote it and J.H. signed it. J.H. testified that he did not recall using the word “predelibera-tions” and stated that it is not a word that he would ordinarily use. J.H. agreed that he felt the discussions at the hotel were nothing more than “passing comments on the evidence.” (R. 131.) When asked if he came to a decision regarding Carruth’s guilt before the end of the State’s case-in-chief, J.H. replied, “No. I mean, I had my developing thoughts, but I hadn’t heard all the arguments.” (R. 130.)
On appeal, Carruth claims that the circuit court’s order conflicts with the evidence presented at the evidentiary hearing. In its order denying the claim, the circuit court made the following findings:
“Several jurors testified during the evi-dentiary hearing. Some jurors at most may have made ‘passing comments’ concerning the nature of some of the evidence. No juror testified that discussions concerning [Carruth’s] guilt or possible sentence were ever made or heard until the case was turned over to the jury to begin deliberations after being properly instructed.”
(C. 351.)
Carruth argues that J.H.’s written statement, combined with the testimony from the hearing, established that the jurors had already made up their minds regarding Carruth’s guilt before formal deliberations began. Carruth also argues that the circuit court’s factual finding that “ ‘No juror testified that discussions concerning petitioner’s guilt or possible sentence were ever made or heard until the case was turned over to the jury to begin deliberations after being properly instructed’ is directly contradicted by [J.H.’s] testimony and his written statement.” (Carruth’s brief, at 65.)
However, the circuit court only admitted J.H.’s written statement for the purpose of impeaching the testimony J.H. gave at the evidentiary hearing. (R. 134.) At the hearing, J.H. testified that the discussions at the hotel were never in-depth but were merely “passing comments” about certain pieces of evidence. (R. 131.) Although J.H.’s written statement indicated that the jurors discussed Carruth’s guilt and a possible sentence before formal deliberations began, that statement was only offered for impeachment purposes. The circuit court chose to give greater weight to J.H.’s in-court testimony and this Court must give that decision great deference. This Court has held:
“ ‘[Wjhere there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, “[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.” ’ Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App.2003) (quoting Elliott v. State, *654 601 So.2d 1118, 1119 (Ala.Crim.App.1992)). ‘When conflicting evidence is presented ... a presumption of correctness is applied to the court’s factual determinations.’ State v. Hamlet, 913 So.2d 493, 497 (Ala.Crim.App.2005). As explained in Brooks v. State, 929 So.2d 491 (Ala.Crim.App.2005):
“ ‘ “The resolution of ... factual issue[s] required the trial judge to weigh the credibility of the witnesses. His determination is entitled to great weight on appeal.... ‘When there is conflicting testimony as to a factual matter ..., the question of the credibility of the witnesses is within the sound discretion of the.trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.’ ”
“ ‘Calhoun v. State, 460 So.2d 268, 269-70 (Ala.Crim.App.1984) (quoting State v. Klar, 400 So.2d 610, 613 (La.1981)).’
“929 So.2d at 495-96.”
Broadnax v. State, 130 So.3d 1232, 1240 (Ala.Crim.App.2013).
The circuit court’s order is not contradicted by the testimony presented at the evidentiary hearing. Rather, the circuit court chose to give little weight to J.H.’s written statement and resolved any contradictions in favor of J.H.’s in-court testimony. The circuit court’s determination is entitled to great weight on appeal and this Court does not find it to be contrary to the evidence. Accordingly, we find that the circuit court did not abuse its discretion in denying this claim.
VII.
Finally, Carruth argues that the circuit court erred by refusing to allow hearsay testimony at the evidentiary hearing. At the hearing, Carruth sought to introduce hearsay testimony through Jan-ann Mclnnis, a mitigation expert, in order to establish that his trial counsel were ineffective during the penalty phase of his trial. Mclnnis had planned to introduce statements that she obtained from Car-ruth’s friends and family, which Carruth claimed should have been introduced at the penalty phase of his trial.
The State objected to the admission of these statements on the grounds that they constituted inadmissible hearsay. The State cited Giles v. State, 906 So.2d 963, 985-86 (Ala.Crim.App.2004), overruled on other grounds by Ex parte Jenkins, 972 So.2d 159 (Ala.2005) (wherein this Court held that the Alabama Rules of Evidence apply to postconviction proceedings).
In his brief on appeal, Carruth acknowledges that hearsay is inadmissible in a postconviction proceeding. However, Car-ruth urges this Court to overrule Giles to the extent that it holds that hearsay is inadmissible in situations similar to the one in the present case. According to Carruth, his evidentiary hearing was a “de facto sentence proceeding where Carruth sought to show the evidence which would have likely convinced the jury to recommend a sentence of life without parole instead of death.” (Carruth’s brief, at 68.) Carruth argues that not allowing hearsay in such a situation runs afoul of Rule 102, Ala. R. Evid., which provides that the Rules of Evidence “shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.”
However, Carruth fails to explain why it would be necessary to overrule Giles and allow for hearsay in situations such as the one in the present case. Hearsay testimony offered through Mclnnis was not the only way for Carruth to present the miti *655 gation evidence he sought to introduce. As noted, Mclnnis had planned to testify about things she had learned from her conversations with Carruth’s family and friends. Nothing prevented Carruth from actually calling those same friends and family members to testify at the evidentia-ry hearing. Allowing Mclnnis to offer that testimony through hearsay would have deprived the State of its right to cross-examine those witnesses. Accordingly, we see no reason to overrule Giles.
For the foregoing reasons, the judgment of the circuit court is affirmed,
AFFIRMED
WELCH, KELLUM, and JOINER, JJ„ concur
WINDOM, P.J., recuses herself,

1. Brooks was convicted of capital murder and sentenced to death in a separate proceeding. See Brooks v. State, 973 So.2d 380 (Ala.Crim.App.2007).

. This general rule is subject to exceptions not applicable here. See, e.g., Ex parte Clemons, 55 So.3d 348 (Ala.2007).

. “C2” denotes the record on appeal from case number CR-06-1967, State v. Carruth, 21 So.3d 764 (Ala.Crim.App.2008). On page 15 of the supplemental record on appeal in the *636 present case, the Russell County Circuit Clerk noted that Carruth's original Rule 32 petition was part of the record on appeal from CR-06-1967.

. "C3” denotes the supplemental record entitled "Miscellaneous Vol. 2” from case number CR-03-0327, Carruth v. State, 927 So.2d 866 (Ala.Crim.App.2005).